103 So.2d 713

Mrs. Charlene Willoughby JONES, Dative Testamentary Executrix,

v.

M. Carl JONES.

No. 43820.

Nov. 10, 1958.

Rehearing Denied Dec. 15, 1958.

See, also, 234 La. 549, 100 So.2d 502.

Jackson, Smith, Mayer & Kennedy, Shreveport, Wynne & Wynne, Philip Brin, Longview, Tex., for plaintiff-appellant.

Hussey & Smith, Marion K. Smith, Shreveport, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, Mrs. Charlene Willoughby Jones, as Executrix of the estate of her late husband, Winston Albert Jones, instituted suit in the First District Court, Caddo Parish, against the defendant, W. Carl Jones (brother of the deceased) to recover $477,096.69, that amount being claimed as half of the proceeds allegedly received by the defendant from a half interest in a mineral lease affecting some 21½ acres of land in Gregg County, Texas, from date of first production to April 2, 1952, the date of her husband's death;[1] and for further judgment decreeing the succession of Winston

---

1. In her original petition plaintiff prayed for judgment in amount of $596,543.30, claimed as half of the value of the total production accruing to an undivided half interest in the mineral lease as disclosed by defendant's own figures and allegedly

Albert Jones to be the owner of an undivided one-fourth interest in the said mineral lease by virtue of a confession under oath by defendant that the disputed half interest was owned equally by the defendant and the decedent [2] but without prejudice to the rights of any party at interest to proceed by appropriate action against the defendant to recover the remainder of the half interest; and further, that the defendant be required to account in this proceeding for all of the funds received by him at any time which have accrued from the said one-quarter interest he admits belonged to decedent.

The defendant filed (a) an exception to the jurisdiction ratione materiae, (b) an exception of no cause or right of action, (c) a plea of res judicata, and (d) an answer.[3]

received by him or placed to his credit by the purchaser of the minerals from date of first production through June, 1955; but by amendment the plaintiff disclaimed the right to demand an accounting subsequent to the date of decedent's death, since "income and proceeds received by the defendant after the date of decedent's death accrued to and are the property of the legal successors in title of the decedent."

2. The theory of plaintiff's case, as revealed by various allegations of her original petition, is that the entire undivided half interest in the mineral lease with which this case is concerned belonged to her husband, and that no part belonged to defendant. She asserts that during the year 1931 her husband acquired from Lawson Lacy a mineral lease covering the said 21½ acres in Gregg County, Texas; that on April 22, 1932, he assigned and conveyed to Ruston Drilling Company (now T. L. James Production Company) for a cash consideration of $12,000 and an obligation to adequately develop, an undivided half interest in the lease; and that on March 31, 1933, in order to acquire funds to reimburse Ruston Drilling Company for half of the cost of certain equipment and improvements placed upon the lease, decedent borrowed from his brother, the defendant herein, the sum of $4,000, to be repaid with interest, to secure the payment of which the decedent, on that date, assigned to defendant his undivided half interest in and to the lease; that although defendant has received, as proceeds of half of the oil, gas and minerals produced from the property, many times the amount of the loan, and notwithstanding repeated amicable demands for a reconveyance, yet the record title to an undivided half interest in the lease has remained in the name of defendant and defendant has received from the operator and/or purchaser of the oil and gas from wells on the property the entire proceeds of half of the value of the minerals produced since such assignment.

3. These pleadings were filed prior to the amendment of the petition noted in footnote 1. The first-mentioned exception was that the Court below was without jurisdiction to adjudicate petitioner's claim of ownership to an interest in an oil and gas lease covering lands situated in Texas, or to decree an accounting based upon an "unadjudicated litigious claim" in view of the fact, as alleged in plaintiff's petition, that she did on September 5, 1953, individually and on behalf of the two minor (adopted) daughters of the decedent, file suit against this defendant in the district court of Gregg County, Texas, for recognition of her claim of decedent's ownership to an undivided half interest in the lease, and for restitution and damages, and that said suit is still pending. In support of the exception labeled (b) above, defendant contended that plaintiff could not split her cause of action and sue for a portion of the claim only. The plea of res judicata was founded on plaintiff's statement in her pe-

Exceptions (a) and (b) were argued, submitted, and sustained, but that ruling was reversed on motion for rehearing, the district judge having noted that the defendant in answer to the suit admitted that the Succession of his brother owned a one-fourth interest in the mineral lease—in view of which the Judge expressed the opinion that while the Court was without jurisdiction to adjudicate the title to the lease in question, and would not do so, yet it had jurisdiction to determine whether or not defendant has accounted to plaintiff for net amounts received accruing to the one-fourth interest admittedly belonging to the Succession of Winston Albert Jones. And the trial judge, although still of the opinion that plaintiff should not be permitted to split her claim (exception (b) above), decided that the objection would be available only at such time as plaintiff undertook to sue for the other half of the proceeds from the lease.

By way of answer the defendant denied the plaintiff's version of the transactions concerning the mineral interest; and stating that the lease was acquired by the decedent many years prior to his marriage to plaintiff, defendant averred that the 1932

assignment of an undivided half interest therein was made by "Winston Albert Jones, Trustee" to Ruston Drilling Company for a consideration of $3,000, and on March 31, 1933, Ruston Drilling Company assigned to defendant an undivided half interest; that "Winston Albert Jones, Trustee," also, executed said assignment; that the interest so acquired by defendant was owned jointly by him and his brother, in the proportion of a half each, and decedent had so acknowledged by instrument in writing and under oath on May 16, 1950; similarly his wife, the plaintiff, acting individually and on behalf of her husband, had made the same type of acknowledgment in two separate instruments under oath and dated August 1, 1949.[4] Defendant further averred that he had already made an accounting to the plaintiff for all funds coming into his hands belonging to the decedent, and likewise for all charges made and amounts paid out for decedent's account, as reflected by the itemized statement filed in the Succession proceedings of Winston Albert Jones;[5] and by special plea of compensation and set-off the defendant pleaded the extinguishment of the debts which defendant owed the deceased at the

tition that she had endeavored to secure, in the Texas proceeding, an accounting of the proceeds, but the court in Texas had refused to order such an accounting prior to an adjudication of plaintiff's claim to an interest.

4. These instruments, being Form 843 of the Treasury Department, Internal Revenue Service, as shown by photostats at-

tached to the answer, were claims for refund and for abatement with respect to a delinquent penalty and interest thereon, assessed against deceased for the calendar years 1945 and 1946.

5. The Succession proceeding bears number 111,523 on the docket of the First District Court, Parish of Caddo.

time of each item on the account, when both the brothers were indebted to each other. The defendant represented that the balance due decedent, as shown by those figures, had been deposited in the Registry of Court on December 18, 1953 and withdrawn by plaintiff; that so long as he received or had in his possession funds belonging to Winston Albert Jones or to his Succession, defendant paid to plaintiff for the support of herself and the two children the sum of $1,000 per month, but that, as the result of a notice of lis pendens which plaintiff caused to be served in September, 1953, upon the purchaser in Texas, no funds accruing to the disputed half interest have come into his possession or been available to him since that date. Attached to the answer was a reconventional demand, supported by an itemized statement, in which defendant alleged that from December, 1953 to December, 1956 he had paid to the operator of the lease, T. L. James Production Co., half of the operating expenses; that these aggregated $62,641.78, and the heirs of Winston Albert Jones owe half, or $31,320.-89, for which amount he prayed for judgment.

Pleas of prescription were filed by (a) the defendant, who argued that plaintiff's suit was for judgment on items of an open account and all items of account prior to November 4, 1952, were therefore barred by the lapse of three years under Civil Code Article 3538; and (b) by plaintiff, who likewise relied on the prescription of three years with respect to recovery from the Succession of money advanced by defendant.

From a judgment in which the plaintiff's demands were rejected at her costs, and the defendant's reconventional demand against the Estate of Winston Albert Jones was dismissed as in case of non-suit, with a reservation of his right to assert in any proper proceeding a claim for said item together with other items disallowed, the plaintiff appealed, and the defendant has answered the appeal, assigning as error by the lower court the denial of defendant's plea of prescription and dismissal of his reconventional demand.

The trial judge showed extreme patience and care in the conduct of this tedious trial, complicated by the various pleadings and counter-pleadings. He rendered three written opinions on exceptions and apparently devoted much time and effort to preparing his written reasons. After carefully studying the case we conclude that he was correct in his ruling. His reasons include a factual history based on the evidence, the pleadings and statements from counsel, and because of the clarity of his exposition we have borrowed extensively therefrom in the interest of comprehending the various facets of this dispute.

"Winston Albert Jones died testate on April 2, 1952. His will was probated May 6, 1952, and the application of plaintiff for

appointment as executrix was ordered advertised according to law. It appears that no further action was taken by plaintiff, and on September 3, 1953 Henry E. Linam applied to be appointed,[6] whereupon Mrs. Jones opposed his appointment, and her application and Mr. Linam's application were tried, resulting in a judgment dated February 10, 1954, appointing Mrs. Jones as Executrix. An inventory of decedent's estate in Louisiana was taken on February 26, 1954, showing community property valued at $45,601.55.

"On December 18, 1953, while the applications for the appointment of an executor were pending, Mr. Carl Jones filed in the Succession proceedings a statement of receipts and disbursements for the account of Winston Albert Jones from March 31, 1932 up to and including November 30, 1953, showing a balance due Winston Albert Jones of $22,829.47, and alleged that since that date he paid certain amounts for the estate of Winston Albert Jones, leaving a balance of $7,690.16 due said decedent, and requested and obtained an order authorizing him to deposit said sum in the registry of the court; whereupon plaintiff, on application, withdrew said amount * *, filed a tableau of debts due by decedent aggregating $8,616.39 and paid thereon $6,462.30, leaving unpaid $2,154.09, since which time she sold the Succession's interest in certain pipe and other movable property on an expired lease for the sum of $1,750. Therefore, it appears that there are no further debts due by the Estate of Winston Albert Jones or, if so, they are inconsiderable.

"It appears that Winston Albert Jones was an oil promoter and 'plunger.' He carried no property in his individual name. Even his home in Shreveport was carried in the name of his brother, M. Carl Jones, who paid for same for decedent out of the proceeds due decedent from the Lacy Lease in Texas. After the death of Winston Albert Jones, plaintiff desired to obtain the title to her home from Mr. Carl Jones who, on advice of counsel, tendered her a deed to the property in the name of 'The Estate of Winston Albert Jones' as vendee. Plaintiff refused same and brought suit for herself and children, which suit resulted in a judgment in her favor.[7]

"Plaintiff alleges and defendant admits that plaintiff, on September 5, 1953, acting

6. Henry E. Linam was named in decedent's will as "trustee without bond for my two adopted children, Rebecca and Jimmy, in equal parts, one half of my interest in the oil lease executed by Lawson Lacy and R. Lacy, to Winston Albert Jones on July 9, 1931, Recorded * *."

7. This finding disposes of plaintiff's allegation "That the decedent's home located at Municipal Number 1212 East Kings Highway in the City of Shreveport, paid for entirely with the decedent's funds, was likewise standing in the name of the defendant herein until wrested from him by judgment of this Honorable Court in proceeding No. 116,206."

individually and as nearest friend of the minors of decedent, instituted suit against the defendant in Gregg County, Texas, praying judgment for title and possession of the one-half interest in the Lacy Lease and for restitution, damages and cost, wherein defendant admitted that decedent had a one-fourth interest in said lease. * * * In that suit it appears that plaintiff filed notice with the pipeline companies, and they have withheld all payments for oil since September 30, 1953. In that suit plaintiff claimed decedent owned the whole one-half interest, in the face of an affidavit signed by her, dated August 1, 1949, and filed with the Internal Revenue Department, stating that said lease was owned jointly by her husband and M. Carl Jones, and an affidavit filed with the said Department, signed by W. A. Jones on May 16, 1950, wherein he stated that said lease was owned jointly by him and M. Carl Jones.[8]

"Subsequent to the trial of the case in Gregg County, plaintiff filed the present suit, on November 4, 1955.

"By its terms the will of Winston Albert Jones named Henry E. Linam as trustee for decedent's two adopted children (children of plaintiff's deceased sister) and willed to said trustee a one-half of his interest in the Lacy Lease in Gregg County, Texas. The other one-half of his interest in said lease was disposed of as follows: 'To my wife Charlene, ⁹⁄₂₀ths of my interest. To my mother, Allie Jones, a ¹⁄₁₀th of my interest. To my sister Lillie Maud Evans, a ¹⁄₁₀th of my interest. To my sister Bell Bridges, a ¹⁄₁₀th of my interest. To my stepdaughter Caroline, a ¹⁄₂₀th of my interest. The balance of my estate I leave to my two adopted children, Rebecca and Jimmy.' None of the beneficiaries under the will have sought to be placed in possession of decedent's estate in Louisiana,

---

8. The said affidavits, being claims for abatement of a penalty for delinquent taxes assessed against W. A. Jones and his wife covering the calendar years 1945 and 1946, plus interest thereon, show similar statements to the effect that "The deponent verily believes that this claim should be allowed for the following reasons: Taxpayer and his brother, M. Carl Jones, Shreveport, La., own jointly the R. Lacy lease in the East Texas field. M. Carl Jones is the record owner of the lease and for many years prior to 1947 upon the advice of his accountant had reported the total income on his Federal return, notwithstanding the fact that this method caused a much greater tax to be paid on this income. Upon securing the advice of a certified public accountant that the income should be reported by the true owners regardless of the record owner, and the approval of this recommendation by the internal revenue agent who examined his 1945 return, my brother (M. Carl Jones) advised me to file a delinquent 1945 return. This was done (community returns filed—see separate claim for Mrs. Charline Jones) and M. Carl Jones filed claims for 1945. See copy of letter attached. Inasmuch as the income shown on the delinquent return on which this penalty has been assessed had previously been included in good faith on a timely return (and tax paid at a higher rate), it is respectfully requested that the penalty now assessed be abated."

and inasmuch as the Lacy Lease in Gregg County was willed to the beneficiaries named in the will, who of course would be entitled to the oil production from the date of decedent's death, plaintiff by a supplemental petition limited her claim herein to such production up to and including the death of her husband. * * *

"Plaintiff does not allege that there are presently any debts due by the decedent. Neither does she allege that the estate is insolvent, and there are no legacies to be paid under the law. * * *

"Plaintiff alleges that she is suing the defendant for the amount he has received from the oil produced from the Lacy Lease * * *. There is no statement in the evidence that any oil whatever has been produced, or that the defendant has received any money for oil produced from the lease. * * * After much cross-examination [of defendant], plaintiff filed in evidence herein 'The Succession record, in so far as it shows the motion for deposit, and shows no objection to it unless the defendant or the mover in that case specifies where the funds came from * * *.' There is no contention, however, that the Lacy Lease is not a producing oil and gas lease and [no proof] that defendant has received half of the oil production after the retirement of the oil payment of $75,000 in favor of the landowner, and that the account filed by defendant in the Succession proceeding covers the receipts by him for oil sold from said lease. As stated, there is no evidence to prove it except the statement made by Kenneith Lacy, defendant's certified public accountant, who testified * * * that he made up defendant's income tax return and found that M. Carl Jones had reported the income from that lease in full, and that he should not have included the interest belonging to Winston Albert Jones. * * *

"As before stated, Winston Albert Jones was a plunger, and it appears that he used the defendant as his banker.[9] The state-

9. The contention of plaintiff that the defendant's relationship to decedent was that of a depositary who had obtained decedent's property through fraud and ill practice, and therefore that defendant was not entitled to plead compensation, was succinctly rejected with the remark that the income received by defendant from the lease was in accordance with his agreement with Winston Albert Jones, and "by no stretch of the imagination can it be said that he received same unjustly." A deposition filed in this record (over plaintiff's objection to its relevancy to the issues) given on March 4, 1954 in connection with the proceeding in Gregg County, Texas, by Mr. Byron A. Irwin, an attorney of Shreveport (now deceased), who was present with W. A. and Carl Jones in the office of the latter on March 8 and 9, 1933, during discussions with regard to the consideration to be turned over to the James interests (or Ruston Drilling Company) is to the effect that Mr. Irwin learned from the conversation that Ab Jones had borrowed $3,000 from the James interests with the promise to repay $4,000 by a certain date or "forfeit the property," but on that date, because of the

ment filed in the Succession record begins with a loan to decedent on March 31, 1932, and the evidence shows that for a period of about seven years there were no credits given on said account, until defendant began receiving returns from the oil lease, and at that time [January, 1939] Winston Albert Jones was indebted to defendant in the sum of $25,460.89; after which oil payments began to come in and, according to the account and checks filed in evidence, Winston Albert Jones received approximately $1,500 per month plus additional amounts from time to time. So that, on the date of his death, decedent had a balance due him of $4,566.27, following which defendant paid the expenses of last illness and the funeral expenses of decedent, and paid to plaintiff approximately $1,000 per month, made monthly payments to the Building & Loan on plaintiff's home, and at the same time kept receiving the income from the Lacy Lease, so that on November 30, 1953, there was a balance due the Estate of Winston Albert Jones in the sum of $22,829.47. Defendant then paid $400.77 property taxes on plaintiff's home, $12,-852.11 Federal Estate Tax on the Succession of Winston Albert Jones, and $1,886.-43 to the First Federal Savings & Loan Association as the balance due on plaintiff's home. This left a balance of $7,690.16 which was deposited in the registry of the court and later withdrawn by plaintiff. * * *

"In 1952 plaintiff, through her then counsel Whitfield Jack, employed Mr. C. L. Brooke, a certified public accountant, to make an audit of the account between Winston Albert Jones and defendant. Mr. Brooke worked in conjunction with Mr. Kenneith Lacy, defendant's accountant, who had kept defendant's books for a period of eleven years, and they signed a joint report, which we quote: [10] * * *

bank holiday, it was impossible to get cash and the James interests refused to take a Cashier's check; then "Carl Jones ostensibly went to the bank and got the cash out of his deposit box and he handed me the four thousand dollars in cash to take over there and pay over to the James interests * * * it was my understanding from what was said that Carl was to put up this money to redeem the property, and it was to be redeemed for himself and Ab, equally and jointly. * * No sir, there was nothing said about a loan. * * * both Ab and Carl were pretty much incensed towards the James brothers. They both felt that they [James brothers] were trying to take advantage of the situation * * * the property was being redeemed by Carl and he was to have a half interest in it in consideration of redeeming it. * * *." This attorney then took the cash to Ruston, prepared the assignment, obtained the signatures thereon, and turned over the cash.

10. The quoted report reads as follows:
"Dear Mr. Jack: Below we are giving you the figures which were used to arrive at the amount of $27,500, which Mr. M. Carl Jones owed to the Estate of Mr. W. Abb Jones on April 2, 1952.

"Mr. Carl Jones' books reveal that, from the time he started to receive runs from the Lacy Lease, the amount which he received up through March 31, 1952 is $849,605.33. This figure includes the

Plaintiff questioned only two items in the report, namely, 'Estimated Federal and Louisiana income taxes,' in the amount of $13,547.41, and 'Chrysler car,' $1,922.09."

runs for the month of March, which were received by him in April, 1952. One-half of that amount which belonged to Mr. W. Abb Jones is ......$424,802.67

"The amounts which have been charged to W. A. Jones' account and which were agreed to be credited to Carl Jones are as follows:

| | |
|---|---:|
| "Advances to December 31, 1942 to W. A. Jones, including advances for T. L. James & Co. to take up note and other costs charged to the Lacy Lease | $106,946.45 |
| "January 1, 1943 to April 2, 1952, both dates inclusive, Cash advances and Chrysler car | 273,336.01 |
| "Real Estate taxes on 1212 East Kings Highway from 1940 through 1951 | 3,472.80 |
| "Estimated Federal and Louisiana income taxes on W. A. Jones' share of his taxable income from the Lacy Lease, which were paid by Carl Jones, but not charged to the account of W. A. Jones | 13,547.41 |
| "Total credits to M. Carl Jones | $397.302.67 |

"The difference between the $424,802.-67 mentioned above and the $397,302.67 given in the preceding paragraph, is $27,500, which you and Mr. Jones agreed yesterday would be the amount which Mr. Jones would owe to the W. A. Jones Estate, as of April 2, 1952.

In reaching his decision the trial judge disallowed both items questioned as in case of nonsuit,[11] recast the account as of the date of W. A. Jones' death by charging

\* \* \* \* \* "

"s/ C. L. Brooke, C.P.A.

"s/ Kenneith F. Lacy, C.P.A."

11. It appears, with respect to the first item, that in making up the account filed in the Succession record a recomputation of defendant's income tax returns for the years in which he reported the whole income (i. e., prior to 1946) was made on the basis of half of the income from the Lacy Lease, the tax thereon computed, and *that* figure deducted from the amount actually paid by defendant— the difference being charged on the account to Winston Albert Jones. In this connection the trial judge observed: "While it is true that Carl Jones paid that much too much in his income tax for those years, it is not certain that Winston Albert Jones owed a like amount. He may have been entitled to deductions for losses and for more dependents than Carl Jones had. \* \* \*." With reference to the item of $1,922.09 for the Chrysler automobile, the evidence shows that defendant had obtained this car for his wife, who died immediately after the purchase. At the time automobiles were scarce and hard to get, and some six months later, at Christmas time, the automobile was delivered by defendant to the home of decedent; the amount was charged to the account of W. A. Jones on December 31, 1946. The plaintiff's sister testified that when the automobile was delivered, the defendant said: "I brought you a Christmas present" and held up the keys, and that nothing was said at the time about a price or a sale. The defendant on the trial of the case made no explanation of the matter, and the plaintiff did not testify. The item was disallowed because the trial judge was "unable to pass on the fact satisfactorily" to himself.

back those items, and obtained a total due Winston Albert Jones' Estate as of April 2, 1952 of $42,969.50; against this were total credits of $49,804.09, the sum of amounts expended since the date of decedent's death, including the deposit of remainder;[12] and the Court observed: "From the foregoing, since plaintiff has sued defendant for amounts received by him to April 2, 1952, defendant is entitled to more credit than the charges in favor of the plaintiff." The plaintiff's demands were therefore rejected at her cost. The items making up the defendant's reconventional demand—half of the expenses paid by him for operation of the Lacy Lease in Texas from the month of December, 1953, up to and including January 25, 1957, or a sum of $31,320.89—should be paid, said the court, out of the proceeds being held by the purchasers of the oil, and should be asserted against the owners of the lease under the will of the decedent, but were not before the Court; and that demand was dismissed as in case of nonsuit.

Counsel for plaintiff, having used defendant's figures on revenues from production of the lease [13] to compile plaintiff's claim for $477,096.69, contend here, as they did by timely objection throughout the trial below, that none of the other figures making up the statement filed by defendant in the Succession proceedings are admissible because (a) a claim against a deceased person should be asserted in the succession proceedings of the decedent and not by way of a plea of compensation or reconvention in a suit by the succession representative for indebtedness owing by the claimant; (b) parole testimony to prove a debt against a deceased person is incompetent, and objection thereto should be sustained, where the demand is made more than twelve months after the death of the decedent; and (c) the demand in compensation presents no cause or right of action and no evidence was admissible on that claim, because compensation cannot be urged as a defense to an action in restitution or for the return of a deposit, and

12. "Credits:

| | |
|---|---|
| "Paid to Mrs. Charlene Jones since April 2, 1952 | $17,177.28 |
| "Paid last illness and funeral expenses of W. A. Jones | 3,089.93 |
| "Internal Revenue and Estate taxes on Estate of W. A. Jones | 16,537.68 |
| "J. H. Jackson | 750.00 |
| "Real Estate taxes paid for the Estate | 404.61 |
| "Building & Loan on decedent's home | 4,154.43 |
| "Deposit with Clerk of Court | 7,690.16 |
| "Total Credits | $49,804.09" |

13. During the trial, the statement filed in the succession proceedings by defendant titled "Analysis of W. A. Jones Account (and Estate of W. A. Jones Account) on Books and Records of M. Carl Jones from January 1, 1932, to November 30, 1953," was offered by plaintiff "for the restricted purpose of showing the amount of money that this defendant received from the production of the lease which he admits."

moreover, the defendant failed to furnish the items, dates, and manner in which the obligations were, incurred, as required by law.

Counsel for defendant, for their part, under an Exception of No Right of Action filed in this Court, for the first time assert the want of interest in plaintiff [14] to have judicially determined the rights of others since she is merely the Dative Testamentary Executrix (no executor having been appointed by the testator), as such has not been granted the seizin of the testator's estate (citing, in particular, Article 1660 of the Civil Code),[15] is legatee under the will only to the extent of a 3/20ths interest, has neither alleged nor proved that there are debts, and has no interest to serve by usurping the rights of the legatees to sue for their own property.[16] On the merits, the defendant contends, with appropriate citation of authorities, that an account offered against a party must be taken as a whole; that compensation and set off take place by the mere operation of

law when two parties are indebted to each other, and is not barred by prescription; that the law of "deposit" has no place in this case; and that he is entitled to be reimbursed by the estate of decedent for any expenditures made on his behalf for the preservation of the lease, both before and after his death.

■ Defendant's argument that the appeal taken by the Dative Testamentary Executrix should be dismissed is without merit, and may be disposed of summarily. In the recent case of Gregory v. Hardwick this Court aptly observed: "In support of their position that the testamentary executrix (who was not given seizin by the will) has no right to institute this suit, defense counsel rely primarily on Civil Code, Article. 1660, which reads in part: * * * By these provisions the executrix, in our opinion, is not precluded from joining the other plaintiffs [legatees] in obtaining for the succession the relief sought in this action [an accounting from defendant]. To the contrary they recog-

---

14. Counsel quote from McMahon's Louisiana Practice, p. 455:
 "The exception of want of interest is a peremptory exception founded on law, which may be filed at any stage of the proceedings, even on appeal, prior to definitive judgment. * * * "

15. "The testator may express his intention to grant the seizin of his estate to the testamentary executor, either in express terms, * * * or by merely appointing him testamentary executor and detainer of his estate; * * *. But

if the executor testamentary be merely appointed testamentary executor, without any other power, his functions are confined to see to the execution of the legacies contained in the will, and to cause the inventory and other conservatory acts of the property of the succession to be made." Article 1660, Louisiana Civil Code.

16. A motion to dismiss the appeal in this case, based on the same argument, was dismissed. See 234 La. 549, 100 So.2d 502.

.nize the performance of certain functions (execution of the legacies and the making of the inventory) which this executrix cannot undertake until she obtains the desired accounting and otherwise ascertains the extent and value of decedent's estate. The information is necessary also for the marshalling of decedent's assets and the payment of debts and inheritance taxes which the succession owes, these being merely ordinary and usual administrative duties." 218 La. 346, 358, 49 So.2d 423, 427. (In the instant case the plaintiff is also a legatee.)

 Turning now to plaintiff's contentions on the merits, her arguments do not impress us. The trial judge, defining the relationship between deceased and defendant and rejecting the labels (depositary, joint adventurers) sought by opposing counsel to be placed thereon with resulting legal effects, correctly held that "* * * so far as it goes, the parties were co-owners, and as such, since the property was in defendant's name, he became the agent of the deceased and is bound as such, and is entitled to be reimbursed for any expenditures he made on behalf of or for the account of the decedent." We also approve his ruling that "the prescription of ten years, relating to all personal actions, is applicable. Under the facts in this case, prescription has not run in favor of either party; hence the pleas of prescription are overruled." With respect to plaintiff's showing on appeal that a claim or a debt against the deceased cannot be urged in this proceeding or must have been asserted within twelve months of the death, suffice to say that it is totally inappropriate; we are not here concerned with either a "claim" or a "debt" and the arguments have no place under the facts of this case.

According to the express provisions of the Civil Code, "The books of merchants can not be given in evidence in their favor; they are good evidence against them, but if used as evidence, the whole must be taken together." Article 2248. In the instant case, plaintiff not only had the account before her, but -had been furnished with checks supporting the charges against the estate, and she employed a certified public accountant to make a detailed investigation.[17] The account itself, requiring ten legal size pages, is a statement containing closely written items of debit, credit and balance covering almost twenty-two years; also indicated, as to each item, is the date, an explanation, and a check number where appropriate. The objection, therefore, that the defendants failed to furnish the items, dates, and manner in which the obligations were incurred, is clearly without merit.

There remains only the contention of defendant that he is entitled to be reim-

17. Those checks were all identified, testified to and filed in evidence,

bursed by the estate of decedent for any expenditures made on his behalf for the preservation of the lease. The trial judge's disposition of this claim, with reservation of defendant's rights, was correct.

For the reasons assigned, the judgment appealed from is affirmed.

PONDER, J., absent.

106 So.2d 723

**ROY O. MARTIN LUMBER CO., Inc.**

**v.**

**Mrs. Cleo Bryant STRANGE.**

No. 43664.

March 17, 1958.

On Rehearing Nov. 10, 1958.

Rehearing Denied Dec. 15, 1958.