647 So.2d 1344 (1994)
Eric DUBUCLET, Individually, and as Curator of His Wife, Glenda Dubuclet, and Glenda Dubuclet
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Hartford Fire Insurance Company, American Continental Insurance Company, a Subsidiary of Multi Hospital Mutual Insurance, Ltd., and Multi Hospital Mutual Insurance, Ltd.
No. 94-CA-0708.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
Frederick J. Gisevius, Jr., David E. Caruso, Jr., Patrick H. Hufft, New Orleans, for plaintiffs/appellants.
William S. Penick, Dwight C. Paulsen, III, Lemle & Kelleher, L.L.P., New Orleans, for defendants/appellees.
Before CIACCIO, LOBRANO and JONES, JJ.
*1345 CIACCIO, Judge.
Plaintiffs appeal from a trial court judgment dismissing their direct action suit against defendant St. Paul Fire & Marine Insurance Company. We reverse.
On April 28, 1978, plaintiff, Glenda Dubuclet, was admitted to Touro Infirmary to deliver her child. During the course of her labor and delivery, Mrs. Dubuclet suffered an amniotic fluid embolism and cardiac arrest. As a result, Mrs. Dubuclet suffered permanent brain damage and the infant died shortly thereafter.
Mr. and Mrs. Dubuclet filed a suit for damages in April 1979 (CDC #79-6293), naming as defendants, Touro Infirmary, Dr. Victor Brown, Mrs. Dubuclet's obstetrician/gynecologist, and Dr. John R. Davis, the anesthesiologist on duty at the time of the delivery. As Dr. Davis and Touro Infirmary were qualified health care providers under the Louisiana Medical Malpractice Act, plaintiffs submitted their claims against Dr. Davis and Touro Infirmary to a medical review panel. In September 1981 after the medical review panel proceeding, plaintiffs filed an amended and/or supplemental petition for damages renaming Dr. Davis and Touro Infirmary as defendants (CDC # 81-15178).
In January 1982 as part of discovery, plaintiffs propounded eighteen requests for production of documents to Dr. Brown, one of which sought the production of "any and all policies of insurance, primary as well as excess, which may provide coverage for liability, if any, for risks such as those involved in the incident sued upon herein, in the allegations made therein by the plaintiffs." Dr. Brown responded to plaintiffs' requests for production of documents in March 1982, stating that he had "... primary coverage through St. Paul Fire & Marine Insurance Company." Although Dr. Brown asserted in several pleadings filed in plaintiffs' original suit that St. Paul issued him a $1,000,000.00 professional liability insurance policy covering him on April 27, 1978 and produced a copy of the policy, plaintiffs failed to amend their original petition to name St. Paul as a defendant.
After several years delay, Dr. Brown moved to set the case for trial and requested a pre-trial conference. Although plaintiffs opposed the motion, the trial judge set the trial date on the original suit for February 3, 1992. On the eve of trial, plaintiffs entered into a partial settlement agreement with Touro Infirmary which necessitated the joinder of the Patient's Compensation Fund. The trial was then continued.
In January 1993 the trial judge reset plaintiffs' original suit for trial on October 4, 1993. Plaintiffs then filed an amended petition seeking to add several insurers, including St. Paul, as defendants. Because plaintiffs' amended petition was untimely under the court's pre-trial order, the trial court denied plaintiffs' motion to amend and add the insurers as defendants. Plaintiffs filed a motion for rehearing which the trial court denied.
In June 1993, plaintiffs filed suit under the Louisiana Direct Action Statute, LSA-R.S. 22:655, naming as defendants, St. Paul, Hartford Fire Insurance Company, and American Continental Insurance Company, the insurers of Dr. Brown, Dr. Davis and Touro Infirmary, respectively (CDC # 93-10471). The trial court entered an ex parte judgment dismissing the plaintiffs' direct action suit with prejudice. Plaintiffs then sought supervisory writs to this court, seeking review of the trial court's judgments in the original suit denying their motion to amend to join the insurers as defendants and dismissing their direct action suit with prejudice. On August 26, 1993 in 93-C-1598, we affirmed the district court's refusal under LSA-C.C.P. art. 1151 to permit plaintiffs to amend their petition, but reversed the district court's dismissal of the direct action suit on its own motion.
Hartford Insurance Company then filed an exception of res judicata. St. Paul and American Continental Insurance Company joined in Hartford's exception. St. Paul subsequently filed a plea of laches. On November 5, 1993, the trial court held a hearing on St. Paul's exception of res judicata and plea of laches. In the meantime, plaintiffs settled *1346 their claims against Dr. Davis, Touro Infirmary and the Patient's Compensation Fund and voluntarily dismissed Hartford and American from the suit.
On November 15, 1993 the trial court rendered judgment, dismissing plaintiffs' direct action suit against St. Paul. After the trial court denied their motion for a new trial, plaintiffs appealed.
In dismissing plaintiffs' direct action suit and sustaining St. Paul's plea of laches, the trial judge gave reasons for judgment. They state in part:
The asserted claims are a direct attempt of getting around this Court's pretrial order. Given the number of years since the alleged 1978 malpractice coupled with pleadings filed in 1979 and 1981 in two separate matters, plaintiffs have had more than ample time to add St. Paul as a party defendant in the earlier suits.
The court adopts St. Paul's supplemental memorandum filed on 27 October 1993 as if (sic) set forth herein in extenso to support the dismissal.
The Court, however, agrees with plaintiffs that res judicata does not lie. This Court's order denying the amendment adding St. Paul is interlocutory in scope, and this Court could within its discretion allow the amendment.
In order to sustain a plea of laches, three elements must be shown:
(1) unreasonable delay on the part of the plaintiff;
(2) the delay is unexcusable; and
(3) the delay unduly prejudices the defendant.
At the 5 November 1993 hearing, plaintiffs's (sic) counsel argued that he needs discovery in order to determine when he first knew that St. Paul was Dr. Brown's insurer. Bunkum! What discovery does plaintiffs's (sic) counsel need to discover something within his own knowledge? He forgets that he admitted to this Court in conference about this case during earlier discussions that he knew in the early 1980's that St. Paul insured Dr. Brown. The representations to the contrary are subterfuge and designed as an apparent effort to get around a lawful pretrial order entered in 1991 to which no objection was ever urged.
The delay is unreasonable per se based on the mere passage of time. Litigation should end in spite of plaintiffs's (sic) counsel (sic) apparent want of understanding of the concept. Fifteen years is enough! Counsel for plaintiffs and ergo plaintiffs have caused the delay because they never sought to add St. Paul. The delay is unexcusable because plaintiffs knew of St. Paul's involvement and never did one thing to name them as a party defendant until after trial on the merits was set by a January 1993 order; they only sought to amend and add St. Paul in April 1993. No prejudice to plaintiffs occur because the insurer is obligated to respond to any judgment for which Dr. Brown may legally be cast, all in accordance with law. St. Paul is prejudiced as a matter of law because the Code of Professional Responsibility requires that they now employ separate counsel to represent their interests since their interests are in part adverse to Dr. Brown. And by this, the Court means that plaintiffs's (sic) counsel now seeks to add St. Paul because of a perceived theory that St. Paul may be liable beyond the cap. If such be plaintiffs' theory, then they should have added St. Paul as a defendant years ago or at least prior to the entry of a pretrial order preventing further amendments of pleadings, or prior to the conference at which a trial date was selected and entered.
If this Court does not have the discretion to enter reasonable pretrial orders, especially in cases as old as the present one (i.e., 1978 alleged malpractice and first pleadings filed in 1979), then the authority of this Court to manage its docket is meaningless and the Courts (sic) is subject to the machinations of attorneys. Respect for the judiciary is accordingly diminished.

*1347 For these reasons and others, the Court dismisses plaintiffs' suit against St. Paul again.
The trial judge also issued amended reasons for judgment which read in part:
[T]his Court stated that Dr. Brown was subject to the cap. This upon reflection, is incorrect for Dr. Brown was not a qualified health care provider to whom the statute applied. Dr. Brown had gone bankrupt and the stay has been lifted against him with respect to this case; thus, the insurer of Dr. Brown, St. Paul, will stand in his shoes and fund any judgment against Dr. Brown for which he is cast. This reinforces the Court's reason for dismissing the direct suit against St. Paul. The cap would have applied to the other settling defendants.
On appeal plaintiffs argue that the trial judge erred in dismissing the direct action against the insurer, St. Paul, where its insured, Dr. Victor Brown was timely sued in a separate suit. They assert that Dr. Brown's subsequent filing for bankruptcy necessitated the direct action against St. Paul. Plaintiffs contend that regardless of the trial judge's pre-trial order in the original lawsuit and his authority to maintain control of the court's docket, the judge had no legal grounds to dismiss the direct action against St. Paul. We agree.
LSA-R.S. 22:655[1] in effect in 1979 provided in part:
The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident of injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure.
Further, an interruption of prescription against one solidary obligor is effective against all other solidary obligors, and the interruption continues while the suit is pending. LSA-CC. arts. 1799, 2324, 3463 and 3503.
The record in the instant case indicates that plaintiffs timely filed their original suit against Dr. Brown in 1979. It also indicates that Dr. Brown filed for bankruptcy in May 1993, shortly before plaintiffs filed their direct action suit against St. Paul. Although plaintiffs failed to name St. Paul as a defendant in the original suit, under LSA-R.S. 22:655 they had the option of bringing an action against St. Paul alone. As plaintiffs' original suit filed in 1979 against Dr. Brown was timely, it interrupted prescription against St. Paul. Because the original suit was still pending in 1993 when plaintiffs filed their direct action, prescription against St. Paul remained interrupted and plaintiffs' direct action suit against the insurer was timely.
In its appellate brief St. Paul asserts that even though plaintiffs' direct action suit was timely filed, the trial court correctly relied on the common law doctrine of laches in dismissing their suit. We disagree.
In Picone v. Lyons, 601 So.2d 1375 (La. 1992) the Louisiana Supreme Court expressly stated that:

*1348 `[t]here is no prescription other than that established by legislation.' LSA-C.C. art. 3457; Crier v. Whitecloud, 496 So.2d 305 (La.1986). The common law doctrine of laches does not prevail in Louisiana and the legislature may create, shorten, lengthen or abolish prescriptive periods at its discretion.
Id. at 1377.
As previously stated, plaintiffs' direct action suit was timely filed and prescription was not a basis for its dismissal. In light of the Supreme Court's holding in Picone v. Lyons, id., we find the trial court erred in relying on the common law doctrine of laches in dismissing plaintiffs' action against St. Paul.
With all due respect to the trial court and cognizant of the trial judge's broad discretion in pre-trial matters and in regulating the court's docket, we find, nonetheless, there was no legal basis for dismissing plaintiffs' direct action against St. Paul and the trial judge erred in doing so.
Accordingly, for these reasons, the judgment of the trial court in favor of St. Paul Fire and Marine Insurance Company dismissing plaintiffs' direct action suit is reversed. The matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] LSA-R.S. 22:655 has been amended by Acts 1988, No. 934, Sec. 1; Acts 1989, No. 117, Sec. 2; Acts 1992, No. 584, Sec. 1; and presently provides that a direct action may be brought against an insurer alone only when:

(a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
(b) The insured is insolvent;
(c) Service of citation or other process cannot be made on the insured;
(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents of between married persons; or
(e) When the insurer is an uninsured motorist carrier.
(f) The insured is deceased.