**Shirley GOODMAN, Plaintiff–Appellee,**

v.

**Audrey LEE and Nikki N. Lee, Defendants–Appellants.**

No. 95–30071.

United States Court of Appeals, Fifth Circuit.

April 1, 1996.

Before JOLLY, WIENER and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff–Appellee Shirley Goodman filed this action in 1985 against Defendants–Appellants Audrey and Nikki Lee (the Lees), respectively the widow and daughter of Leonard Lee (Leonard). Goodman sought *inter alia* a declaration that, together with Leonard, she was a co-author of the rock and roll hit "Let the Good Times Roll," and an accounting from the Lees for all royalties received from the use and exploitation of that song. Goodman thereby let roll a seemingly endless legal battle, instigating litigation that has lingered in the federal courts for more than ten years. After a jury trial and several post-trial hearings, the district court entered a final judgment declaring Goodman a joint owner of the copyright of "Let the Good Times Roll"; ordering the Register of Copyrights to identify her as a co-author and joint owner of the copyright registration; and awarding her one-half of all royalties received by the Lees from 1976 to 1993, together with prejudgment interest computed for those dates at the rates set forth in the Louisiana Civil Code. We affirm.

## I.

### FACTS AND PROCEEDINGS

From 1953 through 1961, the young Goodman and her childhood friend, Leonard, worked together as a rock and roll duo, composing and recording songs under the professional name of "Shirley and Lee." In 1956, "Shirley and Lee" composed their biggest hit, "Let the Good Times Roll," a song which was eventually to be rerecorded by such well known artists as Barbra Streisand, B.B. King, and Ray Charles. Even though Goodman asserts—and the jury found—that she co-authored "Let the Good Times Roll" with Leonard, when the song was copyrighted as a result of Leonard's efforts, he was listed as its sole author. Consequently, he

Richard E. Bennett, New York City, David Robert Paddison, Covington, LA, for plaintiff-appellee.

Irwin Spiegel Osher, Nathaniel Albert Osher, The Osher Law Firm, Los Angeles, CA, Richard A. Goins, Adams & Reese, New Orleans, LA, for defendants-appellants and movants.

George R. Alvey, Jr., New Orleans, LA, for Nikki N. Lee and Atlantic Music Corp.

David L. Carrigee, New Orleans, LA, Robert D. Hoffman, Jr., Burke & Mayer, New Orleans, LA, for Atlantic Music Corp.

received all of the royalties from "Let the Good Times Roll" from 1956 to the time of his death in 1976. After Leonard died, the Lees continued collecting the income from the song.

In 1984, after the Lees had authorized the renewal of the copyright pursuant to 17 U.S.C. § 304(a),[1] Goodman demanded payment of her share of the royalties that they had received from the song. The following year she filed this suit against the Lees in federal district court, seeking a declaration that (1) "Let the Good Times Roll" constituted a joint work under the provisions of the Copyright Act,[2] and (2) her name should be included on the copyright registration as a joint author and co-owner of the copyright. Goodman also asked the court to order an accounting from the Lees for one-half of the royalties received from the song, and she brought *inter alia* a state law fraud claim against Audrey Lee. Even though Leonard's succession was judicially opened in 1977 and has never been closed, Goodman named neither the estate nor the succession representative[3] as a defendant in the action.

The district court initially dismissed Goodman's action for lack of subject matter jurisdiction. But, in *Goodman I,* we reversed that determination, holding that the district court had exclusive original jurisdiction over Goodman's action.[4] We reasoned that her claim for a declaratory judgment establishing her co-authorship of the song was a federal question arising under the federal copyright laws.[5] In January of 1988, the case was tried to a jury, which returned a verdict in favor of

Goodman. The jury found that Goodman was a co-author of "Let the Good Times Roll" and that she "did not know or should not have known" until 1984 that Leonard had listed himself as the sole author on the copyright register of the song. In 1995, in its final judgment, the district court awarded Goodman $670,899.39—a sum comprising (1) one-half of all royalties received by the Lees from 1976 to 1993, and (2) prejudgment interest computed from 1976 to 1993 at the rates set by Louisiana Civil Code Article 2924.[6] The Lees timely appealed to this court.

## II.

## ANALYSIS

### A. EVIDENTIARY ISSUES

▬▬▬ The Lees first contend that the district court abused its discretion by refusing to admit three items into evidence: (1) the 1956 Certificate of Copyright Registration for "Let the Good Times Roll"; (2) a published sheet music edition of the song that credited authorship of the song solely to Leonard Lee; and (3) music publishing statements received by Goodman between 1954 and 1981. The court refused to admit these documents because the Lees had neglected to identify them as exhibits in their pretrial order. We have consistently held that the determination whether to admit into evidence exhibits that are not listed in the pre-trial order is within the "broad discretion" of the

---

**1.** *See* 17 U.S.C.S. § 304(a)(1)(C) (Law.Co-op 1994) (providing that "the widow, widower or children of the author, if the author is not living, . . . shall be entitled to a renewal and extension of the copyright").

**2.** *See* 17 U.S.C.S. § 101 (Law.Co-op 1994) (defining a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole"); *see also* 17 U.S.C.S. 201(a) (Law.Co-op 1994) (providing that "[t]he authors of a joint work are co-owners of copyright in the work"). As we have earlier noted, "[a]lthough the original copyright to 'Let the Good Times Roll' was acquired under the Copyright Act of 1909, the later Copyright Act of 1976 makes no substantive change in the provi-

sions relevant to this case." *See Goodman v. Lee,* 815 F.2d 1030, 1032 n. 6 (5th Cir.1987) [hereinafter *Goodman I*].

**3.** "Succession representative" is a generic term in Louisiana, referring to administrators of intestate successions and executors of testate successions.

**4.** *See Goodman I,* 815 F.2d 1030.

**5.** *Id.* (holding that Goodman's action arises under the Copyright Act because it "clearly involves the application and interpretation of the copyright ownership provisions" of the Copyright Act).

**6.** *See* LA.CIV.CODE ANN. art. 2924 (West 1987).

district court.[7] Moreover, a district court need not consider matters omitted from a pre-trial order unless such consideration is necessary to prevent manifest injustice.[8] In the instant case, none dispute that the Lees not only knew of the existence of the subject documents for at least two years before trial but also had ready access to them. As the Lees have given no compelling justification for their failure to include these items in the pre-trial order, and as we are not convinced that the district court's decision produces manifest injustice, we hold that the court did not abuse its discretion by refusing to admit these exhibits.

## B. JURY INSTRUCTION

 The Lees next contend that the district court committed plain error by failing to instruct the jury on the doctrine of constructive or inquiry notice. According to the Lees, without an instruction explaining the doctrine of constructive notice, the jurors "could not reasonably be expected to interpret" the following interrogatory: "Do you find by a preponderance of the evidence that Shirley Goodman did not know or should not have known that Leonard Lee listed himself as the sole author on the copyright register for 'Let the Good Times Roll' until 1984?" The Lees concede that at the time of the trial they failed to object to the jury charge given by the court.

 We have repeatedly held that jury instructions issued without objection can lead to reversal only if plain error is demonstrated.[9] Reviewing for plain error entails determining whether "the deficient charge was likely responsible for an incorrect verdict which in itself creates a substantial injustice or resulted in a plain error so fundamental as to result in a miscarriage of justice." [10]

We find no such error in the instant case. The Lees vastly overstate the level of guidance needed by the jury to understand the expression "should have known." Although the interrogatory is not as detailed as the Lees have now decided that they would like it to have been, imprecision alone does not warrant reversal.[11] All in all, we are not convinced that the failure to issue an instruction explaining or defining constructive or inquiry notice resulted in a miscarriage of justice; accordingly, we decline the Lees' invitation to reverse the jury's verdict on this ground.

## C. SUBSTANTIVE CLAIMS

Our analysis of the remainder of the Lees' arguments requires a disentangling of the relationship among Goodman's claims. This case is complicated by the fact that Goodman's claims are governed to some degree by federal law but in larger part by state law. We therefore pause for a moment to unravel the claims and to examine the applicability of federal and Louisiana law.

In *Goodman I* we held that the federal courts have exclusive original jurisdiction over Goodman's action because her request for a declaratory judgment to establish co-authorship under the Copyright Act necessitated the application and interpretation of the copyright ownership provisions of the Act.[12] Those provisions define a joint work and stipulate that joint authors of a work are co-owners of a copyright in the work.[13] In the instant case, the jury found Goodman to

---

7. *See Gilbert v. Tulane Univ.,* 909 F.2d 124, 127 (5th Cir.1990) (citing *Robert v. Conti Carriers and Terminals, Inc.* 692 F.2d 22, 24 (5th Cir.1982)); *see also Trinity Carton Co., Inc. v. Falstaff Brewing Corp.,* 767 F.2d 184, 192 n. 13 (5th Cir.1985) (citations omitted), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986).

8. *See Trinity Carton,* 767 F.2d at 197 n. 13.

9. *See Int'l Meat Traders, Inc. v. H & M Food Sys.,* 70 F.3d 836, 840 (5th Cir.1995) (citing *Highlands Ins. v. Nat'l Union Fire Ins.,* 27 F.3d 1027, 1032 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995)); *Kelly v.*

*Boeing Petroleum Serv.,* 61 F.3d 350, 361 (5th Cir.1995).

10. *Int'l Meat Traders,* 70 F.3d at 840 (internal quotations omitted) (citing *Kelly,* 61 F.3d at 362; *Rodrigue v. Dixilyn Corp.,* 620 F.2d 537, 540 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981)).

11. *See United States v. Kington,* 875 F.2d 1091, 1098 (5th Cir.1989).

12. *See Goodman I,* 815 F.2d at 1031–32.

13. *See* 17 U.S.C.S. §§ 101, 201(a).

be a joint author with Leonard of "Let the Good Times Roll." [14] As that finding is supported by the record, under the terms of the federal Copyright Act Goodman is a co-owner of the copyright in the song.

The applicability of federal law ends with that determination, as Goodman's claim for an accounting is governed in all respects by state law. It is widely recognized that "[a] co-owner of a copyright must account to other co-owners for any profits he earns from the licensing or use of the copyright...." [15] Significantly, *"the duty to account does not derive from the copyright law's proscription of infringement. Rather, it comes from '... general principles of law*

---

**14.** Even though the Lees contend that the district court erroneously refused to admit evidence that might have countered this finding, they do not argue that the evidence admitted at trial was insufficient to support it.

**15.** *Oddo v. Ries, MME,* 743 F.2d 630, 633 (9th Cir.1984) (internal citations omitted); *see also* cases cited *infra* note 16.

**16.** *Id.* (emphasis added); *see also Community for Creative Non–Violence,* 846 F.2d 1485, 1498 (D.C.Cir.1988) ("Joint authors co-owning copyright in a work are deemed to be tenants in common, with each having an independent right to use or license the copyright, subject only to a duty to account to the other co-owner for any profits owned thereby.") (internal quotations omitted), *aff'd on other grounds,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.,* 223 F.2d 252 (2d Cir.1955); *Korman v. Iglesias,* 736 F.Supp. 261, 265 (S.D.Fla.1990) ("[T]he Copyright Act neglected to provide for remedies between co-authors.... The District of Columbia, Second, and Ninth Circuits have held and Congress must have intended that co-authors may claim for an accounting ... under common law principles since the Copyright Act makes no mention of how co-authors should enforce their rights to royalties as against each other.") (applying Florida law to plaintiff's claim for share of royalties derived from joint work); *Picture Music, Inc. v. Bourne, Inc.,* 314 F.Supp. 640, 646–47 (S.D.N.Y.1970) ("It is clearly established that where a truly 'joint work' is created, each co-owner is akin to a tenant in common. Accordingly ... compensation obtained from the unilateral exploitation of the joint work by one of the co-owners without the permission of the others is held in a 'constructive trust' for the mutual benefit of all owners, and there is a duty to account therefor.") (internal citations omitted), *aff'd on other grounds,* 457 F.2d 1213 (2d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972); H.R.Rep. No. 94–1476, 94th Cong., 2d

---

*governing the rights of co-owners.'* " [16] As those general principles are rooted in state law, we look to the law of Louisiana for answers to the remaining issues presented by this appeal.[17]

### 1. *Louisiana Law of Co–Ownership*

A Louisiana court may require a co-owner in possession to account to a co-owner out of possession for all revenues derived from the jointly owned property.[18] Stated differently, a co-owner has a right of action against another co-owner to recover his or her share of the fruits or products of the property held in common.[19] Accordingly,

---

Sess. 121 (1976) (stating that under the 1976 Copyright Act, as well as under 1909 Act, co-owners of copyrights are "treated generally as tenants in common, with each co-owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co-owners for any profits").

**17.** *Cf. Goodman I,* 815 F.2d at 1031 (noting that even though federal jurisdiction existed over Goodman's claim for a declaration of co-ownership of the copyright, her demand for an accounting likely involved state law issues).

Goodman's fraud claim is also governed by state law. The Lees have raised a number of arguments with regard to the validity of the fraud claim. We need not address those arguments, as we hold that Goodman is entitled to recover the entirety of the damages that she was awarded, solely on the basis of her action to recover revenues collected by a co-owner. Her fraud claim is accordingly superfluous.

**18.** *See Ellias v. Ellias,* 651 So.2d 939, 942 (La.Ct. App.), *writ denied,* 654 So.2d 333 (La.1995); *Riddle v. Simmons,* 626 So.2d 811, 815 (La.Ct.App. 1993), *writ denied,* 637 So.2d 459 (La.1994); *Lambright v. Lambright,* 264 So.2d 796, 800 (La. Ct.App.1972) ("The established jurisprudence in this state is that a co-owner in possession of common property may be required to account to his co-owner, out of possession, for all ... revenues derived from the property held in indivision."); *Grubbs v. First Nat'l Bank of Shreveport,* 182 So.2d 203, 206 (La.Ct.App.1965) ("[T]he rule is well established that a co-owner in possession of common property must account to his co-owner out of possession for all ... revenues derived by him therefrom."); *Juneau v. Laborde,* 228 La. 410, 82 So.2d 693, 695–95 (1955).

**19.** *See Juneau,* 82 So.2d 693; *Ellwood Oil Co. v. Anderson,* 655 So.2d 694 (La.Ct.App.) (citing Louisiana Civil Code article 798, which codified well established principles of co-ownership de-

the district court correctly determined that Goodman is entitled to recover her share of the proceeds collected by the Lees from the use of "Let the Good Times Roll."

■■■■ On the other hand, Goodman is not entitled to recover any part of the royalties received by Leonard before his death. She failed to name either his estate or its succession representative as a defendant in the action. The district court correctly noted that, under Louisiana law, once a succession has been opened judicially, it is a distinct legal entity that answers for the decedent's obligations until the succession proceedings have been closed.[20] Accordingly, "while a succession is under administration a suit against that estate must be brought against the [succession representative] whose duty is to defend the same."[21] As Goodman failed to join the succession representative of Leonard's estate, she cannot collect the royalties owed to her by the decedent—namely, the royalties collected by Leonard from the time the work was copyrighted in 1956 until his death in 1976.

### 2. Statute of Limitations

■■ Under Louisiana law, an action by a co-owner for an accounting is governed by a ten-year prescriptive period (statute of limitations), which "d[oes] not begin to run until demand is made ... for an accounting."[22] As Goodman first demanded her share of the income derived from "Let the Good Times Roll" in 1984, her action, filed in 1985, was timely.

■■ In challenging this conclusion, the Lees argue that the three-year statute of limitations set forth in the Copyright Act governs this action. They assert that Good-

man's claims accrued more than three years before she filed her complaint, and that the action is accordingly time-barred. They argue in the alternative that, at a minimum, Goodman's recovery should be limited to the period beginning no earlier than three years before the action was brought, i.e., relating back no further than 1982. Neither argument can prevail.

Section 507(b) of the Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."[23] But this case does not present an action that is "maintained under the provisions" of the Copyright Act. The Act details at length precisely which civil actions and remedies are available for copyright infringements.[24] Nowhere in the Act, however, do its provisions detail any action available to a co-owner for an accounting. Instead, as discussed above, such an action is governed by state law.[25] Consequently, even though the case requires an interpretation of the Copyright Act's definition of a joint work—thereby compelling the assumption of federal jurisdiction—the action is not being *maintained* under the provisions of the Copyright Act: There are no provisions in the Act establishing or governing such an action. Accordingly, we reject the Lees' contention that the three-year statute of limitations set out in § 507(b) governs Goodman's claim.

### 3. Laches

■■■■ The Lees also argue that because Goodman's action was not brought for more than twenty years after the composition of "Let the Good Times Roll," her claims are barred by the equitable doctrine of laches.

---

veloped by Louisiana courts), *writ denied*, 661 So.2d 466 (La.1995); *Ellias*, 651 So.2d 939; *see also* Jeanne M. Gravois, Comment, *The Revision of Louisiana Co–Ownership Law*, 65 Tul L.Rev. 1261 (1991).

20. *See* sources cited *infra* note 21.

21. *See Interstate Collection Bureau v. Olivier*, 457 So.2d 688, 689 (La.Ct.App.1984) ("[I]t is clear that while a succession is under administration a suit against that estate must be brought against the administrator whose duty is to defend the

same.") (involving a claim brought by a creditor of the decedent); *see also* La.Code Civ.Proc. art. 734.

22. *Juneau*, 82 So.2d at 697; *see also Ellias*, 651 So.2d at 942; *Jones v. Jones*, 236 La. 52, 106 So.2d 713, 722 (La.1958).

23. 17 U.S.C.S. § 507(b) (Law.Co-op 1994).

24. *See* 17 U.S.C.S. §§ 501–11 (Law.Co-op 1994).

25. *See supra* notes 15–17 and accompanying text.

This argument is without merit: The Louisiana Supreme Court has specifically stated that the common law doctrine of laches does not apply to actions maintained under Louisiana law.[26] Moreover, even if we were to assume *arguendo* that a federal common law doctrine of laches applies to Goodman's action, the Lees' argument would still fail. To establish that a cause of action is barred by laches, "the defendant must show (1) a delay in asserting the right or claim; (2) that the delay was *not excusable;* and (3) that there was undue prejudice to the defendant."[27] In the instant case, the Lees cannot establish that the delay by Goodman in filing her action was inexcusable. The jury specifically found that Goodman "did not know or should not have known that Leonard Lee listed himself as sole author on the copyright register for 'Let the Good Times Roll' until 1984." Additionally, after the Lees filed post-trial motions asserting that Goodman misrepresented the date on which she originally discovered her rights to royalties, the district court held further evidentiary hearings on the issue and corroborated the jury's finding. That finding is supported by the record, and it bars the conclusion that Goodman's delay was inexcusable. Accordingly, even if we were to apply a federal laches doctrine, it would not bar Goodman's claim.

### 4. *Prejudgment Interest*

The Lees further contend that the district court erred in awarding Goodman prejudgment interest beginning in 1976, the year in which the Lees started receiving royalties. They posit that prejudgment interest should have been awarded only from the date of judicial demand. We disagree. Louisiana law provides that "[w]hen the ob-ject of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum *from the time it is due....*"[28] A duty to account to a co-owner leads to the existence of a debt under Louisiana law,[29] and the obligation to pay that debt arises when revenues are received. Accordingly, we affirm the district court's award of prejudgment interest from 1976.

### 5. *Deduction of Income Taxes from Royalties*

Finally, for the first time on appeal, the Lees contend that the district court erred by awarding Goodman one-half of the gross royalties received from 1976–1993. Instead, the Lees insist that in calculating Goodman's share the district court should have deducted state and federal taxes from the gross receipts. We will consider issues not raised before the district court only if the new issue presents a purely legal question and if failure to consider the issue would result in a miscarriage of justice.[30] In the instant case, the Lees have not raised a purely legal issue, for our consideration of their argument would require a factual finding with regard to the taxes paid on the royalties. Neither have the Lees established that the calculation of damages based on the gross income received from "Let the Good Times Roll" amounts to a miscarriage of justice. Accordingly, we decline to consider this issue on appeal.

### III.

### CONCLUSION

For the foregoing reasons, we affirm the district court's judgment declaring Goodman

---

26. *See Cormier v. Clemco Serv. Corp.,* 48 F.3d 179 (5th Cir.1995) (quoting *Billizon v. Conoco, Inc.,* 864 F.Supp. 571 (E.D.La.1994) (citing *Picone v. Lyons,* 601 So.2d 1375, 1377 (La.1992); *see also Dubuclet v. St. Paul Fire and Marine Ins. Co.,* 647 So.2d 1344, 1346 (La.Ct.App.1994) (" 'The common law doctrine of laches does not prevail in Louisiana and the legislature may create, shorten, lengthen, or abolish prescriptive periods at its discretion.' ") (quoting *Picone,* 601 So.2d at 1377); *Hendee Homes, Inc. v. Lee,* 614 So.2d 733, 735 (La.Ct.App.), *writ denied,* 616 So.2d 707 (La. 1993).

27. *See Geyen v. Marsh,* 775 F.2d 1303, 1310 (5th Cir.1985) (emphasis added).

28. LA.CIV.CODE ANN. art. 2000 (West 1987 & Supp. 1996); *see also Shell Offshore, Inc. v. Marr,* 916 F.2d 1040 (5th Cir.1990); *Ortego v. Dupont,* 611 So.2d 792 (La.Ct.App.1992).

29. *See, e.g., Grubbs v. First Nat'l Bank of Shreveport,* 182 So.2d 203 (La.Ct.App.1965).

30. *See, e.g., Batiansila v. Advanced Cardiovascular Sys., Inc.,* 952 F.2d 893, 896 (5th Cir.1992).

a joint owner of the copyright of "Let the Good Times Roll"; ordering the Register of Copyrights to identify her as a co-author and joint owner of the copyright registration; and awarding her one-half of all royalties received by the Lees since 1976 together with prejudgment interest computed for the dates in question at the rates set forth in the Louisiana Civil Code.

AFFIRMED.