IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-20354

NOBLE ENERGY INC; ST PAUL SURPLUS LINES INSURANCE
COMPANY; ASSOCIATED ELECTRICAL & GAS INSURANCE SERVICES,
LTD

Plaintiffs-Appellants

BITUMINOUS CASUALTY COMPANY

Defendant-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before KING, WIENER, and ELROD, Circuit Judges.

WIENER, Circuit Judge:

This insurance coverage dispute concerns whether, pursuant to a general liability insurance policy issued by Defendant-Appellee Bituminous Casualty Company ("Bituminous") to T&L Lease Services, Inc. ("T&L Lease") (the "Bituminous policy"), Bituminous had a duty to defend and owes indemnity to one of the Plaintiffs-Appellants, Noble Energy, Inc. ("Noble"), in connection with the underlying lawsuit arising from an explosion at an oilfield recycling facility. Noble and its insurers, Plaintiffs-Appellants St. Paul Surplus Lines Insurance Company ("St. Paul") and Associated Electrical & Gas Insurance Services ("Aegis"), appeal the district court's grant of summary judgment in favor of Bituminous. Plaintiffs-Appellants urge that the court erred when it held that

(1) Noble was not an "additional insured" under the Bituminous policy, and (2) even if, arguendo, Noble was an additional insured, the policy's pollution exclusion negates coverage of Noble's alleged liabilities. Convinced that the district court properly held that the pollution exclusion applies to the claims asserted against Noble in the underlying lawsuit, we affirm its ruling that Bituminous does not have a duty to defend or indemnify Noble, making resolution of the question whether Noble was an additional insured unnecessary.

## I. FACTS AND PROCEEDINGS

Noble is engaged in the exploration for and production of petroleum. St. Paul issued commercial general liability and automobile insurance policies to Noble, and Aegis also issued liability insurance to Noble, covering the time when the incident described below occurred.

In August 2000, Noble and T&L Lease entered into a Master Service Agreement (the "Noble/T&L Agreement"), pursuant to which T&L Lease was retained by Noble to collect and dispose of Basic Sediment and Water ("BS&W") from Noble's storage tanks, which are located near two petroleum wells. The Noble/T&L Agreement required T&L Lease to provide additional insurance coverage to Noble under T&L Lease's general liability and auto policies. Soon after entering into the Noble/T&L Agreement, T&L Lease subcontracted its obligations to an affiliated corporation, T&L Environmental Services, Inc. ("T&L Environmental"). Together, T&L Lease and T&L Environmental purchased from Bituminous a commercial general liability policy (the aforementioned "Bituminous policy"), a commercial auto policy, and a commercial umbrella policy. The term of each policy was from April 1, 2002 to April 1, 2003.

On January 13, 2003, T&L Environmental dispatched two trucks to pick up BS&W from Noble's storage tanks and haul the BS&W to a disposal facility off premises. After collecting the BS&W from the tanks and loading it into the two trucks, the T&L Environmental workers drove to a facility owned and

operated by BLSR Operating, Ltd. ("BLSR") in Rosharon, Texas. When the T&L Environmental drivers arrived at the BLSR facility, each backed his truck onto a mud disposal and washout pad, then got out of the truck to complete paperwork, leaving the diesel engine running. While the BLSR employees were unloading the BS&W, the trucks' engines began to race. One of the engines exploded, causing a fire that engulfed both trucks. A T&L Environmental employee and two BLSR employees were killed, and several other workers were injured. It was later determined that combustible vapors from the BS&W, which contained gas condensate, had caused the diesel engines to race, leading to the explosion and fire.

Some surviving employees and the estates of the deceased employees (the "Plaintiffs") filed suits against T&L Environmental, T&L Lease, Noble, and several other companies (the "underlying lawsuit"). Thereafter, Noble's insurance broker, Marsh USA Inc., sent a demand letter to Bituminous, asserting that Bituminous was obligated to defend and indemnify Noble in the underlying lawsuit because Noble was an additional insured under the Bituminous policy. Bituminous rejected this demand.

In April 2004, Noble entered into a settlement agreement with the Plaintiffs in the underlying lawsuit. Pursuant to the agreement, St. Paul and Aegis paid approximately $14,400,000 to the Plaintiffs on Noble's behalf. In a separate transaction, Bituminous paid approximately $5,650,000 to settle the claims asserted directly against its insureds, T&L Lease and T&L Environmental.

In June 2005, Noble, St. Paul, Aegis, and Bituminous arbitrated the issue whether Noble had released its contractual indemnity claim against Bituminous when it settled with the Plaintiffs. The arbitrator concluded that Noble had properly preserved that claim.

3

Several months later, Noble, St. Paul, and Aegis (collectively, the "Appellants") filed this breach-of-contract and declaratory-judgment action against Bituminous in Texas state court. After Bituminous removed the suit to federal court, both sides filed summary judgment motions. The Appellants insisted in their first motion that Bituminous had a duty to defend Noble in the underlying lawsuit; in their second motion, they asserted that Bituminous has a duty to indemnify them for monies paid to the Plaintiffs pursuant to Noble's settlement agreement, up to the Bituminous policy's limit of one million dollars. Bituminous filed a cross-motion for summary judgment, contending that it did not have a duty to defend and does not owe indemnification to Noble.

The district court granted Bituminous's motion for summary judgment, holding that Bituminous did not have a duty to defend Noble because (1) Noble was not an additional insured under the terms of the Bituminous policy, and (2) even if Noble were an additional insured, that policy's pollution exclusion would bar coverage of the Plaintiffs' claims.[1] The court determined further that, because Bituminous did not have a duty to defend Noble, the Appellants' summary judgment motion for indemnity was moot. After the district court denied the Appellants' alternative motions for a new trial and to alter or amend the judgment, the Appellants timely filed a notice of appeal.

## II. ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.[2] Summary judgment "should be

---

[1] The district court also rejected the Appellants' claim that Bituminous had a duty to defend and indemnify Noble pursuant to the additional-insured clause in the Noble/T&L Agreement. To the extent that the Appellants re-urge this contention on appeal, we adopt the district court's reasoning in rejecting it.

[2] Adams v. Travelers Indem. Co., 465 F.3d 156, 163 (5th Cir. 2006).

rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3]

B.    Controlling Law

"Texas follows the 'eight-corners' rule of insurance contract interpretation. The insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations. If the pleadings allege facts stating a cause of action potentially falling within the insurance policy's scope of coverage, the insurer has a duty to defend. Doubtful cases will be resolved in favor of the insured. The insured party bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies."[4]

In Texas, "[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally."[5] Policy language is not ambiguous if it can be given a definite or certain legal meaning but is ambiguous if it is subject to two or more reasonable interpretations.[6] "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[7]

---

[3] Fed. R. Civ. P. 56(c).

[4] United Nat'l Ins. Co. v. Hydro Tank, Inc., 497 F.3d 445, 448 (5th Cir. 2007), amended on rehearing by No. 06-20335, 2008 WL 1799963 (5th Cir. Apr. 22, 2008) (internal quotation marks and citations omitted).

[5] Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).

[6] Id.

[7] Id.

## C.    Pollution Exclusion

The Appellants contend that the district court erred when it held that (1) Noble was not an additional insured under the Bituminous policy, and (2) the policy's pollution exclusion negates coverage of the Plaintiffs' claims against Noble.  An insurer's duty to defend is separate from and broader than its duty to indemnify.[8]  Convinced that the plain language of the exclusion clause unambiguously excludes coverage of each the claims asserted by the Plaintiffs against Noble in the underlying lawsuit even if Noble were held to be an additional insured, we affirm the district court's ruling that Bituminous was not obligated either to defend or indemnify Noble.  Accordingly, it is not necessary for us to address whether Noble was an additional insured under the Bituminous policy.

The pollution exclusion clause in the policy states that the policy does not cover liability for:

> (1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
>
> . . . .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Texas courts have consistently held similar pollution exclusions to be unambiguous.[9]  Like those courts, we hold the pollution exclusion here at issue

---

[8] Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr., 468 F.3d 857, 858 (5th Cir. 2006).

[9] See, e.g., CBI Indus., 907 S.W.2d at 521 (holding that absolute pollution exclusion in policy is neither patently nor latently ambiguous); Zaiontz v. Trinity Universal Ins. Co., 87 S.W.3d 565, 571 (Tex. App.–San Antonio 2002, pet. denied) (holding that absolute pollution exclusion is not latently ambiguous).

to be unambiguous. We turn, therefore, to consider whether the accident that allegedly caused the Plaintiffs' injuries arose out of a "discharge, dispersal, release or escape of pollutants."

The Plaintiffs alleged that the BS&W was the proximate cause of the explosion and fire that had caused their deaths or injuries.[10] According to their petitions, "[d]uring the unloading process, hazardous, harmful substances were released into the disposal facility," which included "hazardous chemical, hazardous wastes, hazardous chemicals [sic], and hazardous hydrocarbons." The Plaintiffs alleged further that "[w]hile the trucks were unloading, the diesel engines began to ingest the combustible vapors in the fuel rich atmosphere, which resulted in the speed of one or both of the engines to increase uncontrollably," ultimately causing the ensuing explosion and fire. The Plaintiffs categorized the BS&W at issue as "unwanted waste material" and "hazardous oilfield waste." Additionally, the Plaintiffs alleged that "Noble knew that the tank bottoms on the wells in question contained a mixture of highly flammable gas condensate and presumably innocuous basic sediment and waste such that the material[] was more akin to gasoline than salt water."

Based on these allegations and the Bituminous policy language, we hold that the Plaintiffs' claims, arising as they did out of the explosion and fire at the BLSR facility, fall squarely within the policy's pollution exclusion: Under the Plaintiffs' allegations, the BS&W and the combustible vapors that emanated from it indisputably meet the policy's definition of "pollutant"; and Noble's alleged liability for the workers' deaths and bodily injuries indisputably arose out of the discharge, dispersal, release, or escape of the BS&W and its vapors. The Appellants' contentions to the contrary are without merit.

---

[10] Specifically, the Plaintiffs alleged that "[t]he combustible vapors, and associated liquid provided by ... Noble ... was a cause in fact of the subject explosion and fire."

7

The Appellants first assert that the pollution exclusion does not apply because the Plaintiffs' injuries resulted from a fire caused by the combustible vapors from the BS&W, acting not as a pollutant but as an accelerant. Thus, the Appellants contend that the pollution exclusion is not implicated because the Plaintiffs' injuries resulted from a quality of the BS&W other than its quality as a pollutant, viz., its quality as a flammable accelerant. The Appellants ignore, though, that the combustible vapors from the gas condensate component of the BS&W plainly meet the pollution exclusion's unambiguous definition of "pollutant." For support of their "pollutant acting as a pollutant" argument, the Appellants refer to Certain Underwriters at Lloyd's London v. C.A. Turner Construction Co.[11] and Pepper Industries, Inc. v. Home Insurance Co.[12] These cases are inapplicable, though, because, among other things, the policies at issue are distinguishable. The policy in Certain Underwriters did not define the term "pollutant," and the policy in Pepper offered a more limited exclusion, covering only pollutants entering "into or upon land, the atmosphere or any watercourse or body of water," which language the court found to be ambiguous. In contrast here, the Bituminous policy's pollution exclusion precisely defines "pollutant" and provides for broad exclusion of coverage, encompassing all bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." Moreover, the Appellants fail to recognize (or refuse to acknowledge) that the hazardous quality of the vapors was the proximate cause of the explosion that killed or injured the workers.

The Appellants nevertheless insist that the pollution exclusion should not govern this case because its application here would ignore the "reasonable, objective expectations of the insured." As support for this argument, the

---

[11] 112 F.3d 184 (5th Cir. 1997).

[12] 134 Cal. Rptr. 904 (Cal. Ct. App. 1977).

Appellants rely on a three-part test crafted in Evanston Insurance Co. v. Adkins: To determine whether the pollution exclusion applies, the court must ascertain (1) "whether the substance at issue falls within the insurance policy's literal definition of pollutant"; (2) "whether it caused the damages in the underlying insurance claim"; and (3) "whether common sense and the 'reasonable, objective expectations of the insured' at the time of contracting make it reasonable to trigger the pollutant exclusion."[13]

We observe initially that, to our knowledge, the Adkins test has not been expressly adopted by any other court. Furthermore, the rationale set forth in Adkins is inapplicable to the instant circumstances. The Adkins court addressed the question whether welding slag, which caused a fire, constituted a pollutant under the pollution exclusion clause. The court ultimately determined that the welding slag—molten metal particles from the welding—failed the third prong of the test because "[i]t would defy common sense and all reasonable expectations to interpret a welder's general liability insurance policy as negated by its pollutant exclusion any time welding slag causes damage or injury."[14] Accordingly, the Adkins court declined to enforce the pollution exclusion after determining that doing so would render the insurance contract nugatory. Unlike the policy in Adkins, though, the Bituminous policy was not intended to insure Noble from liability specifically and solely arising from the accumulation, transportation, and disposal of BS&W, a minor, tertiary aspect of Noble's exploration and production endeavors. Therefore, even if the policy language at issue were ambiguous and even if we were inclined to adopt the Adkins three-part test, the Adkins rationale is inapposite. And, finally, under Texas

---

[13] No. 3:05-CV-2068-L, 2006 WL 2848054, at *6 (N.D. Tex. Oct. 4, 2006) (mem. op.).

[14] Id. at *7.

law, the reasonable expectations of the insured are not to be considered when the policy language is unambiguous, as is the situation here.[15]

The Appellants next assert that the Plaintiffs' allegations fall within the scope of the policy's hostile-fire exception to the pollution exclusion, which exception states

> [The pollution exclusion clause] does not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable, or breaks out from where it was intended to be.

Once again, the Appellants' proposition misses the mark. The hostile-fire exception applies only if a pre-existing fire causes the pollution.[16] Here, the reverse occurred: The pollutant itself directly caused the fire at the BLSR facility, not vice versa, so the hostile-fire exception cannot apply.

Finally, the Appellants advance that the pollution exclusion does not apply because (1) the combustible vapors from the gas condensate component of the BS&W does not constitute a "pollutant" under the policy, and (2) even if it is a pollutant, it was not "discharged, dispersed, or released" into the environment. Both contentions are misguided. As previously noted, the Plaintiffs alleged in their petitions that the BS&W (including its gas condensate component) is a pollutant under the terms of the Bituminous policy and categorized the BS&W as "unwanted waste material" and "hazardous oilfield waste." In the policy's pollution exclusion, "waste" is plainly identified as constituting a pollutant. Furthermore, we reject the Appellants' argument that the BS&W was not discharged, dispersed, or released into the environment simply because it was

---

[15] Constitution State Ins. Co. v. Iso-Tex Inc., 61 F.3d 405, 410 n.4 (5th Cir. 1995) (citation omitted).

[16] See, e.g., Ind. Lumbermens Mut. Ins. Co. v. W. Oregon Wood Prods., Inc., 268 F.3d 639, 644-45 (9th Cir. 2001).

"confined within the area of its intended use." The Appellants ignore entirely the substantial body of case law holding that substances need not be released into the surrounding environment to qualify as pollutants for purposes of a pollution exclusion clause.[17] Thus, a pollution exclusion clause applies whenever a pollutant causes harm by a physical mechanism enumerated in the policy, irrespective of where the injury took place or whether the pollutant was released into the environment.

### III. CONCLUSION

The Bituminous policy's pollution exclusion eschews coverage of the claims asserted against Noble in the underlying lawsuit. Accordingly, Bituminous did not have a duty to defend Noble and does not owe Noble indemnification. As noted above, the duty to indemnify under an insurance policy is separate from and narrower than the duty to defend, and the court may consider facts outside the pleadings to determine whether a duty to indemnify exists under a policy.[18] As the Bituminous policy does not cover the underlying claims asserted against Noble, Bituminous had no duty to defend Noble and has no duty to indemnify Noble under these circumstances. And, as the Bituminous policy's pollution exclusion would eliminate coverage of Noble's alleged liabilities to the Plaintiffs, even if Noble were deemed to be an additional insured, we need not and thus do not address the district court's holding that Noble was not an additional insured.

---

[17] See Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., 112 F.3d 184, 188 (5th Cir. 1997) (pollution exclusions are not limited "to only those discharges causing environmental harm"); Hamm v. Allstate Ins. Co., 286 F. Supp. 2d 790, 794-95 & n.2 (N.D. Tex. 2003) (pollution exclusion barred insurer's duty to defend when injury resulted from indoor accumulation of toluene fumes during an office renovation); Zaiontz v. Trinity Univ. Ins. Co., 87 S.W.3d 565, 571-72 (Tex. App.–San Antonio 2002, pet. denied) (injury caused by "odor eliminator" chemical that was confined to its proper area of application triggered pollution exclusion).

[18] See, e.g., United Nat'l Ins. Co. v. Hydro Tank, Inc., 497 F.3d 445, 448 (5th Cir. 2007), amended on rehearing by No. 06-20335, 2008 WL 1799963 (5th Cir. Apr. 22, 2008).

AFFIRMED.