# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2009

Charles R. Fulbruge III
Clerk

No. 08-20835

MAURICE S JORDAN, professionally known as "Kenoe",

Plaintiff-Appellant

v.

SONY BMG MUSIC ENTERTAINMENT INC, as successor in interest for
Sony Music, individually and doing business as Columbia Records; WESLEY
ERIC WESTON, professionally known as Lil Flip; LUCKY PUBLISHING
COMPANY,

Defendants-Appellees

Appeals from the United States District Court
for the Southern District of Texas
4:06-CV-1673

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Maurice Jordan appeals the grant of summary judgment dismissing his claims of co-ownership and accounting, copyright infringement, and breach of contract against Sony BMG Music Entertainment and Wesley Weston. We affirm in part and remand in part.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

This controversy stems from Maurice S. Jordan's involvement in the creation of the songs "8 Rulez," "Haters Still Mad," and "We Ain't Scared." Jordan, professionally known as "Kenoe," composes music and occasionally works as a music producer. Defendant Wesley Weston is an entertainer and recording artist, professionally known as "Lil Flip." Sony BMG Music Entertainment is in the music business, and, among other things, distributes sound recordings through the Loud Records label. Suckafree Records Inc. is a music company with which Weston worked to produce sound recordings.

Four contractual agreements are relevant to the dispute between the parties. On January 10, 2002, Weston and Suckafree entered into the "Artist Agreement," under which Weston would provide sound recordings to Suckafree. On the same date, Suckafree entered into the "Distribution Agreement" with Sony. Under the Sony/Suckafree distribution agreement Sony and Suckafree agreed to specific royalties and agreed that Sony (through Loud Records) would compute royalties due to Suckafree twice a year. In addition, Sony and Suckagree entered into the "Distribution Agency Agreement," under which Sony would distribute albums that Weston released prior to Suckafree establishing the relationship with Sony. Lastly, on March 27, 2002, Jordan entered into the "Production Services Agreement" with Suckafree. Under this agreement Jordan would produce three recordings for Weston and if Weston used one or more of the recordings on his album and Jordan would be entitled to producer's royalties equal to "three percent (3%) per Recording [of] the sale of any such records embodying the Recordings." The agreement also provided that Weston would pay Jordan a $3,000 advance against any royalties due to Jordan.

Pursuant to these agreements, Jordan composed three melodies for Weston. Weston added rap lyrics over the melodies producing the songs "8 Rulez," "Haters Still Mad," and "We Ain't Scared." These songs were first distributed by Sony on the album *Underground Legend*. In September 2002, Sony registered the sound recordings contained on the album with the United States Copyright Office. In March 2003, the defendants released a second album containing the songs, *Lil' Flip and Sucka Free Present: 7-1-3 and the Underground Legend*. On May 22, 2003, Sony registered the sound recordings contained on the 2003 album with the Copyright Office. On June 1, 2007, Jordan registered a copyright in the melodies of the songs.

The parties agree that Jordan and Weston were co-authors of the final songs. It is also undisputed that Weston transferred his interest in the songs to Suckafree under the Artist Agreement. Suckafree then granted a licence under the Distribution Agreement to Sony for the songs. The district court also found a genuine issue of material fact over whether Suckafree had also transferred its entire interest in the songs to Sony—making Sony a co-owner of the songs as opposed to simply a licencee.

Between September 2003 and February 2006, Jordan repeatedly contacted Sony requesting royalty payments for his services under the Production Service Agreement with Suckafree. Sony did not pay and Jordan sued on May 16, 2006.[1] After each moved for summary judgment, the district court awarded summary judgment to both Sony and Weston; Jordan now appeals. Before us are Jordan's claims for accounting and co-ownership regarding the sound recordings on the

---

[1] The claim for copyright infringement was added January 18, 2008.

albums, copyright infringement for unauthorized use of the melody, and breach of contract against Weston and Sony.[2]

## II

We review a district court's grant of summary judgment de novo.[3] Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4]  "We resolve doubts in favor of the nonmoving party and make all reasonable inferences in favor of that party."[5]  However, "[n]o genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the movant."[6]  Generally, to survive summary judgment, a plaintiff must provide sufficient evidence to create a genuine issue of material fact.[7]  "This court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment."[8]

---

[2]  The district court also dismissed various claims of fraud which were not appealed.

[3] *Noble Energy, Inc., v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008).

[4] FED. R. CIV. P. 56(c).

[5] *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006).

[6] *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007).

[7] *See Celotex Corp., v. Catrett*, 477 U.S. 317, 324-25 (1986).

[8] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citations and internal quotations omitted).

III

Jordan maintains that both Sony and Weston are obligated by contract to pay royalties. Jordan argues that Sony is obligated through an implied contract, an agency relationship with Suckafree or in the alternative that Jordan is a third party beneficiary of the agreement between Sony and Suckafree. Jordan argues that Weston is obligated through the Production Services Agreement which he claims Suckafree signed on behalf of Weston. In granting summary judgment to Sony and Weston, the district court found that Jordan's breach of contract claims were inadequately supported because Jordan provided no evidence of an enforceable contract with Sony or Weston. Essentially for the reasons stated by the district court in its opinion, summary judgment on the contract claims is proper.

IV

Jordan appeals the district court's dismissal of his claims for co-ownership in the sound recordings as time-barred. Jordan argues that he is a co-owner of the final sound recordings. The district court found that Jordan's claim for co-ownership and accounting against Sony was time-barred under the Copyright Act's three year statute of limitations.[9] The district court reasoned that Sony registered as sole owner of the final songs in September 2002 and the statute of limitations ran in September 2005. As Jordan sued in May 2006, the court found his claims untimely.

The Copyright Act defines "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable

---

[9] 17 U.S.C. § 507(b).

or interdependent parts of a unitary whole."[10] "The authors of a joint work are coowners of copyright in the work,"[11] and each owner owes a duty of accounting to the other.[12] While a claim for accounting is a state law claim and thus subject to state statutes of limitations,[13] a claim for co-ownership of a copyright is subject to the federal statute of limitations.[14]

The statute of limitations for civil claims under the Copyright Act is three years.[15] In this Circuit a copyright claim accrues "when [the party] knew or had reason to know of the injury upon which the claim is based."[16] Under the Copyright Act, "[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document."[17] However, the recorded document must contain information that would put the party on notice.[18]

---

[10] 17 U.S.C. § 101.

[11] 17 U.S.C. § 201(a).

[12] *See Goodman v. Lee*, 78 F.3d 1007, 1012 (5th Cir. 1996).

[13] *Id.*

[14] *See Cambridge Literary Props., Ltd., v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 87-88 (1st Cir. 2007) (distinguishing *Goodman* on grounds that co-ownership, as opposed to accounting, is a federal issue governed by federal copyright law).

[15] 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.")

[16] *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006); *see also Groden v. Allen*, 279 Fed. App'x 290, 294 (5th Cir. 2008) (per curiam).

[17] 17 U.S.C. § 205(c); *Daboub v. Gibbons*, 42 F.3d 285, 291 (5th Cir. 1995); *see also Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32 (1st Cir. 2007).

[18] 17 U.S.C. § 205(c)(1).

The district court found that Sony's recordation of its copyrights in the sound recordings provided notice to Jordan that Sony claimed sole ownership. Jordan maintains that the recordation of the songs was insufficient to provide notice, and that even if it was sufficient, he is not time-barred with respect to ownership of the sound recording on the 2003 album as Sony did not record its copyright in the 2003 album until May 22, 2003.[19]

We find that the certificates of registration are sufficient to provide notice that Sony claimed sole ownership of the sound recordings on the 2002 album. The certificates list only Loud Records as the claimant, and the Copyright Office defines the claimant as the individual with the ownership of all rights in the property listed.[20] The record indicates the summary page for the 2002 album includes a song listing that indicate recordings of "8 Rulez," "Haters Still Mad," and "We Ain't Scared" are on the album, although the summary page for the 2003 album contains no track listing. It appears the registration for the 2002 album was sufficient to put Jordan on constructive notice.

Sound recordings have a separate copyright from the underlying musical composition.[21] It is unclear from the record whether there are two independent sound recordings, one on the 2002 album the other on the 2003 album, one sound recording included on both albums, or if the 2003 recording is derived from the

---

[19] As the defendants note, Jordan provides little to no legal analysis in support of his claims; the court would be within its right to find the arguments insufficiently briefed.

[20] 37 C.F.R. § 202.3(a)(3) ("[A] copyright claimant is either: (i) The author of a work; (ii) A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author").

[21] 17 U.S.C. § 102(a)(2) & (7).

7

2002 recording.[22]  The district court's opinion suggests there are two different sound recordings as it referred to "versions" of the songs and the second certificate of registration for the sound recordings on the 2003 album suggests the sound recordings are distinct.  However, Sony claims that the sound recordings on the 2002 and 2003 albums are the same.  The evidence on the record does not permit a conclusive finding.  If there are two distinct sound recordings, then Jordan may not be time-barred with respect to the claim to the sound recordings on the 2003 album, as Jordan brought suit within three years of Sony's registration of the 2003 copyright.  On the other hand, if the 2003 sound recording is the same as the 2002 sound recording, then the registration of the 2002 album put Jordan on notice of Sony's claim of sole ownership.

Jordan also argues he was not put on notice at the date of filing because of delays in the copyright office in publication of recordation. Jordan argues that publication of the registration certificates can take months to process, denying the public notice of their contents.  Jordan provides no legal authority for this argument and such a finding would be in conflict with the express wording of the Copyright Act.  We do not find this claim persuasive.

Given the lack of clarity in the record with respect to the nature of the 2003 sound recording, we remand to the district court for further findings on the

---

[22]  An owner of a copyright in a sound recording has the exclusive right "to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality." 17 U.S.C. § 114(b).   Under 17 U.S.C. § 114(b), "[t]he exclusive right of the owner of copyright in a sound recording under [the right to derivative works] is limited to the right to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed, or othewise altered in sequence or quality."  However, "[t]he exclusive rights of the owner of copyright in sound recording under clauses (1) and (2) of section 106 do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording." *Id.*

matter. With respect to the 2002 sound recording, we affirm the district court's summary judgment that Jordan's claim is time barred.

V

Jordan claims an action for accounting for a share of the proceeds Weston received in the sale of his interest in the sound recordings. The district court found that an action for accounting could only be asserted against a co-owner and that either way, his co-ownership claim was barred by the statute of limitations.

Regardless of whether Jordan's claim is barred by the statute of limitations, his argument fails on the merits. A joint owner is not entitled to a percentage of the profits from the sale of the other owner's interest. An action for accounting is a matter of state law.[23] "It is widely recognized that a co-owner of a copyright must account to other co-owners for any profits he earns from the licensing or use of the copyright." However, this does not extend to the sale of a co-owner's entire interest.[24] A co-owner is entitled to sell his or her share in the property, and the purchaser becomes a co-owner with the remaining owner. Jordan has no right to the proceeds from the sale of Weston's interest. The district court's grant of summary judgment is affirmed.

---

[23] *Quintanilla v. Texas Television Inc.*, 139 F.3d 494, 498 (5th Cir. 1998) ("[T]he duty to account does not derive from the copyright law's proscription of infringement. Rather it comes from general principles of law governing the rights of co-owners." (internal quotations and citations omitted)).

[24] *Trevino v. Trevino*, 64 S.W.3d 166, 174 (Tex. App.–San Antonio 2001, no. pet.) ("[W]e are aware of no such rule of law requiring a cotenant to share the proceeds generated by the sale or conveyance of his undivided interest in property. When a cotenant conveys his entire interest, his grantee simply succeeds to the grantor's right, title, and interest in the common property.").

## VI

Lastly, Jordan appeals the dismissal of his claim for copyright infringement of his melodies. He argues that Weston did not have an interest in the underlying melodies and the district court erred in finding that Sony had a license from Weston to use the melodies. Jordan misconstrues the district court's holding. The district court found that there was no evidence of infringement of the musical compositions or underlying melodies, but rather the evidence indicated Sony only used the sound recordings, for which the court found Sony had a valid license or alternatively was a co-owner of.

"[T]he owner of a copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work."[25] "Anyone who uses the copyrighted material without the permission of the owner is liable for copyright infringement."[26] "To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original."[27] A sound recording and the underlying musical composition are separate works with distinct copyrights.[28]

Jordan has conceded that he is a joint author of the sound recordings with Weston. The record demonstrates that Weston has, through his agreement with

---

[25]  17 U.S.C. § 106.

[26]  17 U.S.C. § 501(a).

[27]  *Positive Black Talk Inc., v. Cash Money Records Inc.*, 394 F.3d 357, 267 (5th Cir. 2004) (citations omitted).

[28]  17 U.S.C. § 102(a)(2) & (7).

Suckafree and Suckafree's agreement with Sony, either transferred his interest in, or granted a license to, the copyrights in the sound recordings. Sony was therefore entitled to use of the sound recordings. Jordan has presented no evidence—and the record does not contain any—suggesting Sony engaged in unauthorized use of Jordan's melodies outside its rightful use of the sound recordings. For the reasons stated by the district court, we agree that summary judgment was proper.

We AFFIRM the summary judgment on the breach of contract and copyright infringement claims and REMAND the claim of co-ownership and related accounting for further findings in accordance with this opinion.