# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3936
_____

Hiland Partners GP Holdings, LLC, a foreign company; Hiland Partners, LP, a foreign partnership; Hiland Operating, LLC, a foreign company

*Plaintiffs - Appellants*

v.

National Union Fire Insurance Company of Pittsburgh, PA

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: December 15, 2016
Filed: January 31, 2017

_____

Before KELLY and MURPHY, Circuit Judges, and MONTGOMERY,[1] District Judge.

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, sitting by designation.

Hiland Partners GP Holdings, LLC, Hiland Partners, LP, and Hiland Operating, LLC (collectively, Hiland) brought this insurance coverage action against National Union Fire Insurance Company of Pittsburgh, PA (National Union).  Hiland alleged that National Union had a duty to defend and indemnify it in connection with a lawsuit arising from an explosion at its natural gas processing facility.  The district court[2] granted National Union summary judgment after concluding that an exclusion to the insurance policy barred coverage.  Hiland appeals, and we affirm.

I.

Hiland owns and operates a natural gas processing facility in Watford City, North Dakota.  The processing facility receives gas and hydrocarbon products and processes them into byproducts for sale. Hiland entered into a master service contract with Missouri Basin Well Service (Missouri Basin).  That contract provided that Missouri Basin would "from time to time, be requested by Hiland . . . to perform certain work or furnish certain services to Hiland."  The contract also required Missouri Basin to obtain insurance policies which named it as the primary insured and Hiland as an additional insured.

Missouri Basin also procured a commercial general liability insurance policy through National Union in April 2011, which was effective through April 2012.  An endorsement to the policy provided that any organization to which Missouri Basin is obligated as a result of any contract or agreement would be included as an additional insured under the policy.  The policy required National Union to pay all "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" which the policy covered.  The policy also required National Union "to defend the insured against any 'suit' seeking those damages."

---

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

The policy included an endorsement which excluded coverage for:

(1) "Bodily Injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

>(a) At or from any premises, site or location which is or was at any time owned or occupied by . . . any insured. . . .
>(b) At or from any premises, site or location which is or was at any time used by or for any insured . . . for the handling, storage, disposal, processing or treatment of waste;
>(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>>(i) Any insured . . . .
>
>(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations . . . .

The endorsement defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The endorsement provided that subparagraphs (1)(a) and (1)(d) do not apply if the pollution "commences during the term of the policy," the insured discovers the pollution within seven days "after it commences," and the insured reports the pollution to the insurer within twenty one business days following its discovery.

In October 2011, Hiland requested that Missouri Basin remove water from its hydrocarbon condensate tanks at its Watford City processing facility. Condensate is one of the marketable byproducts derived from the facility's processing of gas and hydrocarbon products. It is a flammable, volatile, and explosive product. Missouri Basin asked B&B Heavy Haul, LLC (B&B), a subcontractor, to haul the water. After B&B employee Lenny Chapman arrived at the facility he positioned his truck in front of one of the condensate tanks. Before Chapman began removing the water, one of the tanks overflowed. The condensate then caused an explosion which seriously injured Chapman.

Chapman and his wife filed a lawsuit against Hiland, alleging negligence and loss of consortium. The Chapmans later settled their claims against Hiland. National Union refused to defend and indemnify Hiland as an additional insured under its insurance policy with Missouri Basin. Hiland then filed this declaratory judgment action against National Union, arguing it was an additional insured under the insurance policy and that National Union had breached the policy by refusing to defend or indemnify it. After the parties filed cross motions for summary judgment, the district court granted National Union summary judgment. The court concluded that although Hiland was an additional insured under the policy, the Chapmans' action fell within the pollution exclusion. Hiland appeals.

II.

We review a district court's "grant of summary judgment de novo and consider the facts in the light most favorable to the nonmoving party." Nichols v. Tri-Nat'l Logistics, Inc., 809 F.3d 981, 985 (8th Cir. 2016). A district court's grant of "[s]ummary judgment is only appropriate when 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" Id. (quoting Pinson v. 45 Dev., LLC, 758 F.3d 948, 951–52 (8th Cir. 2014)). We review de novo questions of contract interpretation. Anderson v. Hess Corp., 649 F.3d 891, 896 (8th Cir. 2011).

It is undisputed that North Dakota law governs this action. In North Dakota, an "insurer's obligation to defend its insured is ordinarily measured by the terms of the insurance policy and the pleading of the claimant who sues the insured." Tibert v. Nodak Mut. Ins. Co., 816 N.W.2d 31, 42 (N.D. 2012) (quoting Schultze v. Cont'l Ins. Co., 619 N.W.2d 510, 513 (N.D. 2000)). If the allegations in the Chapmans' complaint could have supported recovery upon a risk covered under National Union's policy, National Union would have a duty to defend Hiland. Id. The duty to defend is broader than the duty to indemnify. Id. at 43.

III.

Hiland first argues that the pollution exclusion in the National Union insurance policy is ambiguous. If language in an insurance contract is ambiguous, "any ambiguity or any reasonable doubt as to its meaning should be construed strictly against the insurer, and the doubt or ambiguity favorably to the insured." Universal Underwriters Ins. Co. v. Johnson, 110 N.W.2d 224, 226 (N.D. 1961). A term is ambiguous if "there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations." Id. at 227 (quoting 44 C.J.S. Insurance § 297c, at 1166–69).

National Union argues that Hiland waived any argument that the pollution exclusion was ambiguous because Hiland did not raise any such argument before the district court. We will not ordinarily "consider arguments raised for the first time on appeal." Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 533 F.3d 932, 936 (8th Cir. 2008) (quoting Wiser v. Wayne Farms, 411 F.3d 923, 926 (8th Cir. 2005)). A party therefore "cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment." Id. "We may notice plain error despite a failure to raise the issue below, but we generally do so only to prevent a miscarriage of justice." Id. (internal quotation marks omitted).

In its memorandum in support of summary judgment, National Union argued that the pollution exclusion in its policy "is clear and unambiguous." Hiland chose not to contest this point in its response in opposition to summary judgment. Hiland instead argued that hydrocarbon condensate is not a pollutant under the unambiguous terms of the policy.

Hiland argues that the following sentence in its memorandum in opposition to summary judgment preserved its ambiguity argument: "To find otherwise would

require the Court to look beyond the policy's definition of 'pollutant' and to interpret the ambiguous term to mean what National Union wants it to mean, and not what the policy describes it as being." Read in context, however, this sentence merely reiterates Hiland's argument that the definition of pollutant is unambiguous. Indeed, the district court noted in its summary judgment order that "Hiland does not contend the language of the pollution exclusion is ambiguous." Because Hiland did not directly dispute the ambiguity issue, it is waived. See Cole, 533 F.3d at 936.

We need not review this issue for plain error because a failure to review it will not result in a miscarriage of justice. North Dakota has not addressed whether pollution exclusions like the one in this case are ambiguous. Moreover, the "majority of state and federal jurisdictions have held that absolute pollution exclusions are unambiguous as a matter of law." Church Mut. Ins. Co. v. Clay Ctr. Christian Church, 746 F.3d 375, 380 (8th Cir. 2014) (quoting Cincinnati Ins. Co. v. Becker Warehouse, Inc., 635 N.W.2d 112, 118 (Neb. 2001)).

IV.

Hiland next argues that the district court erred by concluding that condensate is a pollutant. National Union's insurance policy excluded from coverage bodily injuries or property damage "arising out of the . . . discharge, dispersal, seepage, migration, release or escape of pollutants." The policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The policy did not define irritant or contaminant, however. North Dakota applies "the plain, ordinary meaning" to an undefined term in an insurance policy so long as the term is not subject to strict technical usage. Hanneman v. Cont'l W. Ins. Co., 575 N.W.2d 445, 450–51 (N.D. 1998). Neither party argues that the definition of pollutant is subject to strict technical usage.

-6-

North Dakota courts consider dictionaries to be "good source[s] to determine the plain, ordinary definition of an undefined term." Hanneman, 575 N.W.2d at 451. An irritant is defined as "something that irritates," that is, that "produce[s] irritation." Webster's Third New International Dictionary 1197 (2002); see also The American Heritage Dictionary of the English Language 928 (5th ed. 2011) ("Causing irritation, especially physical irritation."). A contaminant is "something that contaminates," that is, that "soil[s], stains[s], corrupt[s], or infect[s] by contact or association." Webster's Third New International Dictionary, supra, at 490; see also The American Heritage Dictionary of the English Language, supra, at 396 (defining a contaminant as "[o]ne that contaminates," that is, that makes "impure or unclean by contact or mixture").

According to Chapman's complaint, condensate is a saleable byproduct that results from the processing of gas and hydrocarbon products. The complaint described condensate as "flammable, volatile, and explosive." Condensate is therefore a contaminant because flammable, volatile, and explosive liquid and gas has the ability to soil, stain, corrupt, or infect the environment. This conclusion is in accord with the "bulk of the case authority . . . [which] holds that oil, gasoline, and other petroleum products are toxic by nature and therefore they constitute a contaminant when released into the environment." Aetna Cas. & Sur. Co. v. Dow Chem. Co., 933 F. Supp. 675, 683 (E.D. Mich. 1996) (collecting cases); see also Owners Ins. Co. v. Farmer, 173 F. Supp. 2d 1330, 1332–34 (N.D. Ga. 2001) (concluding that diesel fuel is a "pollutant"); Breese v. Hadson Petroleum (USA), Inc., 955 F. Supp. 648, 650–51 & n.7 (M.D. La. 1996) (concluding that diesel fuel is a "liquid contaminant"); Guilford Indus., Inc. v. Liberty Mut. Ins. Co., 688 F. Supp. 792, 793–96 (D. Me. 1988) (concluding that fuel oil is a "pollutant").

The conclusion that condensate is a pollutant is further supported by Noble Energy, Inc. v. Bituminous Cas. Co., 529 F.3d 642 (5th Cir. 2008). In that case Noble Energy contracted with a water hauler "to collect and dispose of Basic Sediment and Water ('BS&W') from Noble's storage tanks" at an oilfield recycling facility. Id. at

644. The water hauler was covered by an insurance policy that contained a pollution exclusion that is identical in all relevant parts to the exclusion here. See id. at 646. While an employee of the water hauler was unloading the BS&W from a truck, condensate vapors dispersed and caused the truck's engine to explode. Id. at 644. The court concluded that condensate "indisputably [met] the policy's definition of 'pollutant'" and the explosion "indisputably arose out of the discharge, dispersal, release, or escape of the BS&W and its vapors." Id. at 647. We find Noble Energy, Inc. persuasive and indistinguishable from the current action.

Hiland nevertheless argues that even if condensate has the inherent properties of a contaminant, it does not fall within the policy's definition of a contaminant because the condensate caused harm in a manner other than by contamination. In United Fire & Casualty Co. v. Titan Contractors Service, Inc., 751 F.3d 880, 886 (8th Cir. 2014), we concluded that a "pollution exclusion will not necessarily apply where the substance causing injury has the potential to irritate but has . . . caused harm in a manner other than by irritating." As an example, we noted that if a bottle of Drano qualified as a "pollutant" a pollution exclusion would not necessarily "bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of [the] bottle of Drano." Id. (quoting Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992)).

According to the Chapmans' complaint, the condensate caused Chapman's injuries due to its contamination of the environment. Condensate is a contaminant because it is flammable, volatile, and explosive. After Hiland permitted the condensate tanks to overflow, condensate escaped into the environment. The complaint alleged that overflow of the condensate tanks "caused ignition, fire, and an explosion" which seriously injured Chapman. Because condensate is a contaminant due to its flammable, volatile, and explosive properties and because Chapman's

injuries were the result of an explosion, the nature of the harm here is directly related to the nature of the contaminant.[3]

Hiland also attempts to rely on Hocker Oil Co. v. Barker-Phillips-Jackson, Inc., 997 S.W.2d 510 (Mo. Ct. App. 1999). In Hocker Oil, a company that owned gasoline service stations sought coverage from its insurer after a drain plug on one of its gasoline storage tanks failed, thereby releasing gasoline into the ground. Id. at 512. The insurer denied coverage under a pollution exclusion identical to the exclusion in the present action. Id. at 512–13. After concluding that the exclusion was ambiguous, the court determined there that gasoline was not a pollutant because the insured's primary business was to sell gasoline. Id. at 518. Hiland argues similarly that condensate is not a pollutant because it is in the business of selling condensate. As we have recently noted, however, Hocker Oil is not persuasive because it "has been almost uniformly rejected by appellate courts in other jurisdictions, and has not since been cited or referred to favorably by the Supreme Court of Missouri." Doe Run Res. Corp. v. Lexington Ins. Co., 719 F.3d 868, 875 (8th Cir. 2013).

The district court therefore did not err by concluding that National Union did not have a duty to defend or indemnify Hiland because the allegations in the Chapmans' complaint fell within the policy's pollution exclusion.[4]

---

[3]Notably, the Chapmans' complaint does not allege that "the substance causing injury"—the condensate—"caused harm in a manner other than by" contaminating—that is, by exploding due to its flammable, volatile, and explosive nature. See United Fire, 751 F.3d at 886. Nor does the Chapmans' complaint allege Chapman's injuries were caused by an intervening or superseding cause.

[4]Because we conclude that condensate is a contaminant, we need not determine whether the district court properly concluded that it qualifies as waste under the policy.

## V.

The district court concluded that National Union was not required to defend or indemnify Hiland because subdivisions (1)(a) and (1)(d) of the pollution exclusion applied. Subdivisions (1)(a) and (1)(d) do not however apply if the pollution commenced during the term of the policy, the insured discovers the pollution within seven days after it commences, and the insured reports the discharge of pollution to the insurer in writing within twenty one days of discovering it. The district court concluded that this exception to the exclusion did not apply because Hiland failed to offer evidence that it reported the pollution to National Union within twenty one days of discovering it.

Hiland argues that the district court improperly placed on Hiland the burden at the summary judgment stage to offer affirmative evidence that it reported the pollution within twenty one days. Hiland contends that even if it was required to prove at trial that it reported the pollution to National Union within twenty one days, National Union had the burden at summary judgment to assert the inapplicability of this exception, thus shifting the burden to Hiland to show affirmatively that it reported the pollution in a timely manner.

Under Rule 56, the party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party may resist a properly supported motion for summary judgment by "asserting affirmative defenses which it has the burden to prove" and supporting those defenses with specific facts. Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004).

In North Dakota the "insurer has the burden to prove the applicability of a policy exclusion." Lovas v. St. Paul Ins. Cos., 240 N.W.2d 53, 62 (N.D. 1976)

-10-

(quoting Long v. Glidden Mut. Ins. Ass'n, 215 N.W.2d 271, 274 (Iowa 1974)). The insured, however, carries the burden to prove the applicability of "an exception to the exclusion in order to benefit from coverage." Nationwide Mut. Ins. Cos. v. Lagodinski, 683 N.W.2d 903, 907 (N.D. 2004). As noted above, National Union met its summary judgment burden by proving the applicability of the pollution exclusion. The district court then properly placed the burden of proving the applicability of an exception to this exclusion on Hiland. Because Hiland did not offer specific facts showing that it reported the pollution to National Union within twenty one days, the district court did not err by concluding that the exception to the exclusion did not apply.

VI.

For these reasons, we affirm the judgment of the district court.

_____